COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

JAIME MONARDES,                                          )

                                                                              )               No.  08-00-00512-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
346th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20000D02314)

                                                                              )

 

 

O
P I N I O N

 

Appellant was
indicted for one count of theft over $100,000 and under $200,000, and one count
of misapplication of fiduciary property. 
He was tried by a jury and found guilty of theft.  The trial judge sentenced him to 10 years= incarceration.  Appellant now brings this appeal, raising two
issues for our review:  (1) whether the
trial court erred by excluding exculpatory testimony and evidence; (2) whether
the evidence was legally and factually sufficient to sustain a verdict of
guilt.  We will affirm the conviction.

Appellant is an
owner of a New Mexico corporation, Tri-State Molding and Millwork (ATri-State@).  Tri-State had customers throughout the United
States. 








Tri-State entered
into a AFactoring
Agreement@ with
Prime Funding, Inc.  Prime Funding is a
factoring company, in the business of buying invoices from companies needing
immediate working capital.  Tri-State and
Prime Funding entered into an agreement whereby Prime Funding would purchase
outstanding invoices from Tri-State for collection.  Prime Funding would advance Tri-State 75
percent of the total value of each invoice sold.  Each invoice sold by 

Tri-State to Prime Funding
represented that finished product(s) had been shipped to a customer and payment
of the total invoice amount was owed. 
Once an invoice was sold to Prime Funding, the third-party customer
would be informed of the factoring agreement and instructed to mail the full
amount owed directly to Prime Funding. 
After full payment was remitted, Prime Funding would deduct the amount
already advanced (in this case, 75 percent of each invoice total) and their
fee.  The remaining balance was then
placed in reserve account and ultimately disbursed to Tri-State.  The fee charged by a factoring company was
based on a percentage of the full face value of an invoice.  The longer an invoice is outstanding, the
higher the fee charged.  Relevant in this
case, are multiple invoices related to four different third-party customers.[1]

Appellant engaged
in a combination of unlawful acts, including creating false invoices and false
supporting documentation, misrepresenting the actual amounts owed to Tri-State
on invoices sold to Prime Funding, instructing customers to send payment to
Tri-State rather than Prime Funding and subsequently keeping the payment,
forging signatures on documents, and failing to fill all or part of customer
orders reflected in the invoices. 
Appellant was convicted of one count of theft over $100,000 and under
$200,000, which represents the aggregate amount of money rightfully owed to
Prime Funding and taken by Tri-State.








In addition to the
criminal charges at issue before this Court, there was civil litgation related to these same matters.  Prime Funding obtained a civil judgment
against Tri-State in the amount of $159,900. 
There is also some evidence in the record on appeal that Tri-State
conveyed approximately $800,000 in stock to Prime Funding as part of their
settlement.[2]  

Appellant=s first issue complains the trial court
erred by excluding exculpatory evidence. 
In particular, he contends he should have been able to present evidence
of the civil judgment obtained by Prime Funding against him.  He also maintains the court erred in
excluding evidence that he had honored a personal guarantee to Prime Funding by
turning over stock in the amount of $800,000.

The standard of
review for claims involving the exclusion of the evidence is abuse of
discretion.  Matson
v. State, 819 S.W.2d 839, 850 (Tex.Crim.App.
1991).  A trial court abuses its
discretion only if its decision is shown to have been made without reference to
guiding rules or principles.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990). 
If the decision was within the bounds of reasonable disagreement, the
ruling will not be disturbed on appeal.  Rachal
v. State, 917 S.W.2d 799, 816 (Tex.Crim.App.
1996).








The Appellant
asserts that the court abused its discretion by excluding evidence relevant to
the element of intent.  The gravamen of his argument is that the actions and events
occurring since June 1999 mitigate his culpability.  He reasons that because actions have been
taken to insure Prime Funding will be compensated for their losses, the State
cannot prove he intended to permanently deprive Prime Funding of the money
owed.

Under Texas law, a
person commits the offense of theft if he unlawfully appropriates property with
the intent to deprive the owner of it.  Tex.Pen.Code Ann. '
31.03(a)(Vernon Supp. 2002).  This requisite intent must exist at the time
of the taking.  Peterson v. State,
645 S.W.2d 807, 811 (Tex.Crim.App. 1983)(Opin. on reh=g). 
The theft is complete when the property is in the possession of the
taker.  Masters v. State, 437
S.W.2d 868, 869 (Tex.Crim.App. 1969).  Moreover, a defendant=s intent at a later time does
not serve to establish his intent at the time the crime occurs.  See Roper v. State, 917 S.W.2d 128,
131 (Tex.App.--Fort Worth 1996, pet. ref=d)(where the
court noted, A[w]e
cannot infer intent that might have existed at a later date to a previous
action@).  Further, attempts or agreements to repay, restore or recover the taken property do not alter
the intrinsic offense.  Robinson v. State, 139 S.W. 978 (Tex.Crim.App.
1911).  Texas jurisprudence is repleat with cases holding
appellants criminally responsible for theft, despite subsequent repayment or
restitution.  See Griffin v. State,
614 S.W.2d 155, 159 (Tex.Crim.App.
[Panel Op.] 1981); Donald v. State, 453 S.W.2d 825,
828 (Tex.Crim.App.  1969); Washington v.
State, 881 S.W.2d 187, 193 (Tex.App.--Houston
[1st Dist.] 1994, no pet.); Ellis v. State, 714 S.W.2d 465, 475 (Tex.App.--Houston [1st Dist.] 1986, pet. ref=d).

Here, Appellant
sought to introduce evidence of a civil judgment taken against him.  The State objected, arguing the evidence was
not relevant.  After a lengthy
discussion, the court sustained the objection. 
While the author might disagree, the trial court=s
evidentiary ruling was neither arbitrary or
unreasonable.  Rachal,
917 S.W.2d at 816. 
Accordingly, we find no abuse of discretion by the trial court.  Appellant=s
first issue is overruled.








Appellant=s second issue challenges the
sufficiency of evidence supporting the verdict of guilt.  Appellant argues the evidence was both
legally and factually insufficient to establish the element of intent.  He contends that evidence adduced at trial
demonstrated his intent to pay back any money owed to Prime Funding.  In particular, he points to the testimony of
Roderick Scott indicating Prime Funding=s
awareness of Tri-State=s
financial difficulties and the mutual steps taken to cover invoices that were
short.[3]








In reviewing the
legal sufficiency of evidence, the critical inquiry is whether the trial court
could have found the essential elements of the crime beyond a reasonable
doubt.  See Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d
560, 573 (1979); Turner v. State, 805 S.W.2d 423, 427 (Tex.Crim.App. 1991), cert. denied, 502 U.S. 870, 112
S.Ct. 202, 116 L.Ed.2d 162 (1991); Taylor v. State,
921 S.W.2d 740, 744 (Tex.App.--El Paso 1996, no
pet.).  We view the evidence in the light
most favorable to the verdict, and apply this same standard in reviewing the
sufficiency of both direct and circumstantial evidence.  Geesa v. State, 820 S.W.2d 154, 159-61 (Tex.Crim.App.
1991).  Our role is not to judge
the credibility of the evidence presented or to substitute our evaluation of
the facts for those of the jury.  Sharpe v. State, 881 S.W.2d 487, 488 (Tex.App.--El
Paso 1994, no pet.).  Moreover,
reconciliation of conflicts in the evidence is within the exclusive domain of
the jury.  Losada v. State, 721
S.W.2d 305, 309 (Tex.Crim.App. 1986).  Our sole duty is to determine if the explicit
and implicit findings of the jury are rational when the evidence admitted at
trial is viewed in a light most favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.Crim.App.
1992); Garcia v. State, 16 S.W.3d 401, 404 (Tex.App.--El
Paso 2000, pet. ref=d).  As such, the reviewing court serves as the
final due process safeguard and surety of the fact finder=s rationality.  Sharpe, 881 S.W.2d
at 488-89.

In contrast, a
review of the factual sufficiency of evidence requires an appellate court to
consider all of the evidence presented in a neutral fashion.  Moncada v. State, 960 S.W.2d 734, 740 (Tex.App.--El
Paso 1997, pet. ref=d).  A verdict is set aside only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Clewis v. State, 922
S.W.2d 126, 129 (Tex.Crim.App. 1996); Taylor,
921 S.W.2d at 745.  Expressed
differently, evidence may be found to be factually insufficient if the guilty
verdict is against the great weight and preponderance of the evidence.  Johnson v. State, 23
S.W.3d 1, 11 (Tex.Crim.App. 2000).  Again, the reviewing court cannot substitute
its conclusions for those of the jury.  Davila v. State, 930 S.W.2d 641, 647 (Tex.App.--El
Paso 1996, pet. ref=d).  It is therefore not within our province to
interfere with the jury=s
resolution of conflicts in the evidence or to judge the weight or credibility
of the witness=s
testimony.  Moncada,
960 S.W.2d at 740. 
Where conflicting evidence is presented, the jury=s
determination on such matters is generally regarded as conclusive.  Johnson, 23 S.W.3d
at 9; Chesnut v. State, 959 S.W.2d 308,
311 (Tex.App.--El Paso 1997, no pet.).








The State
presented a large amount of evidence to substantiate the charge that Appellant
had committed theft.  Testimony
established Tri-State had sold false invoices to Prime Funding.  The testimony of Brian Mundell
also indicated the supporting documentation used by Tri-State to assure the
validity of the information on the invoice was falsified.  Roderick Scott=s
testimony clearly established Prime Funding had advanced money to Tri-State on
the basis of the falsified invoices and other bogus documentation.  Additionally, both Roderick Scott and Bob
Rivas told the jury that when confronted, Appellant had admitted that contrary
to the assertions in the invoices, some shipments had not occurred or included
only a portion of the goods indicated on the invoice.  Witnesses also testified Appellant knew his
actions were improper.  The prosecution=s case was further bolstered by
testimony from representatives of each of the 

third-party
companies listed in the falsified invoices. 
Each of these witnesses stated on record the invoices presented to Prime
Funding were fraudulent.  Three of the
four representatives affirmatively indicated Appellant had conducted business
with them in the past and was aware of proper business and accounting
procedures.  Finally, the State
established Appellant had received payments from third-party customers which
rightfully belonged to Prime Funding, but he had nonetheless kept the monies
himself.








The only witness
testifying on behalf of the defense at trial was Appellant=s wife, Patricia Monardes.  She testified to her role as both accountant
and custodian of records for Tri-State.[4]  She explained that in at least one instance,
Prime Funding was aware of and gave permission to Appellant to keep a payment that
should have been forwarded to them under the agreement.  Mrs. Monardes
also told the jury she was aware that partial shipments had been made on some
invoices, but stated that A[w]e
had permission to do that, in the industry.@  She testified that her husband was trying to
fill all orders, but that the business experienced poor profits and slow
supplies of lumber accompanied by higher costs. 
Mrs. Monardes claimed no knowledge of false
invoices, but did admit Appellant owed Prime Funding $126, 927.[5]

When viewed in a
light most favorable to the verdict, the evidence presented would allow a
rational jury to find the essential elements of the offense theft.  Turner, 805 S.W.2d
at 427. Intent to commit a crime may be determined by the words and acts
of the accused.  Griffin, 614 S.W.2d at 159.  A
jury may also look to the circumstances surrounding the event.  Lewis v. State, 715
S.W.2d 655, 657 (Tex.Crim.App. 1986).  In this particular case, the evidence was
largely uncontested that Appellant had used illegal and deceptive means to
secure money for himself that rightfully belonged to another.  As previously discussed, Appellant=s later attempts at remuneration do not
alter his intent at the time he created and employed false invoices,
documentation, and pretenses to fraudulently procure money from Prime
Funding.  See Roper, 917 S.W.2d at 131.

At oral argument,
the Appellant made a plausible argument that there was no evidence that he had
the necessary criminal intent at the outset of the factoring agreement or on
the date of the course of continuing conduct specified by the indictment.  Indeed, it is a general criminal law concept
that criminal intent must precede or be simultaneous with the overt offending
act.  But, by the same token, where in
criminal law can restitution nullify a crime ab
initio?  








We conclude that
the evidence of guilt is formidable. 
Though the defense presented some evidence in conflict with that of the
State, it was the jury=s
responsibility to draw reasonable conclusions from all the evidence and resolve
any contradictions.  Moncada,
960 S.W.2d at 740. 
We find nothing to suggest the jury=s
verdict was clearly wrong and unjust, nor was it against the great weight of
evidence.  Johnson, 23 S.W.3d at 11.  As
such, we find the evidence supporting Appellant=s
guilt to be factually sufficient. 
Appellant=s second
issue is overruled.

Finding no error,
the judgment of the trial court is affirmed. 


 

 

 

October
31, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
The invoices at issue in this case were related to four third-party
customers:  Concannon
Lumber Company of Portland, Oregon; Intermountain-Orient of Atlanta, Georgia;
Jim White Lumber and Mill Works of South Carolina; Huttig
Sash and Door of Missouri. 





[2]
Testimony at trial established Appellant had signed a personal guarantee backing
the agreement between Tri-State and Prime Funding.  On direct-examination, Patricia Monardes testified that almost $800,000 worth of stock had
been turned over to Prime Funding.  The
State objected to the testimony.  The
trial court sustained the objection and instructed the jury to disregard the
comment.  Later, the defense established
a bill of exception for appellate purposes. 
At that time, Mrs. Monardes testified that the
personal guarantee given to Prime Funding was backed by $800,000 in company stock.





[3]
In his brief, Appellant refers to other evidence, such as the civil judgment,
to bolster his argument that he did not intend to permanently deprive Prime
Funding of the amounts owed.  He also
relies on evidence of his personal guarantee and the turning over of
approximately $800,000 in stock to Prime Funding as a partial satisfaction of
the debt.  However, the additional
evidence to which he refers was not before the jury at trial.





[4]
Through her testimony, the defense admitted copies of a check that had been
correctly forwarded to Prime Funding. 
However, this check was not part of theft for which Appellant was
charged.  Instead, this evidence tended
to support both parties=
contentions that some of the transactions between Tri-State and Prime Funding
were handled properly and lawfully.





[5]
As a rebuttal witness to Mrs. Monardes, the State
called Sergio Gonzalez. 
Mr. Gonzalez testified he was an attorney and had dealings with
Mrs. Monardes in the past which allowed him to come
to know her character.  He then stated
that in his opinion she was untruthful.