Lucy MONCADA, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–93–00466–CR.

Court of Appeals of Texas, El Paso.

June 20, 1997.

Discretionary Review Refused Nov. 5, 1997.

---

Gus A. Saper, Houston, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for State.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

BARAJAS, Chief Justice.

Appellant's Motion for Rehearing was granted on February 6, 1997. This Court's opinion and judgment dated October 26, 1995 are withdrawn.

This is an appeal from a conviction for the offense of theft over $20,000. The jury assessed punishment at twenty years' impris-onment and a fine of $10,000. We affirm the judgment of conviction.

## I. DISCUSSION

### A. Limitation of Voir Dire

■ In Point of Error No. One, Appellant asserts that the court erred in curtailing a proper voir question. During voir dire, the following exchange occurred:

DEFENSE: There is going to be testimony that will be given, I believe, that will indicate that Ms. Moncada was providing certain individuals at Sierra Medical with what we would call gratuities—

THE COURT: Excuse me, come up here. Counsel, approach.

THE COURT: Let's not get into the facts right now.

DEFENSE: I'm going to ask if there is anybody who has any biases against gratuities given such as enchiladas—

STATE:—That's contracting—

THE COURT: Go ahead and finish talking.

DEFENSE: There are gratuities being given in that there are enchiladas, Christmas trees, booze, those are gratuities, if somebody has any prejudice against gratuities it needs to be brought up and we need to know who has biases against gratuities.

STATE: That is contracting, judge, with the jury.

THE COURT: Clearly. I'm going to disallow it; don't get into the facts. Explain to the jury why we can't discuss the facts. Your exception is noted. Go ahead.

■ The standard of review where an accused asserts he or she was improperly restricted regarding voir dire questioning is whether the trial court abused its discretion. *Nunfio v. State*, 808 S.W.2d 482, 484 (Tex. Crim.App.1991). A question is proper if it seeks to discern a juror's views on an issue applicable to the case. *Id.* Harm is presumed if an accused is prevented from asking a proper question. *Id.* at 485. However, the parties are not allowed to ask potential jurors questions designed to commit them to positions on a specific set of facts which will arise in the course of a trial. *See White v.*

*State,* 629 S.W.2d 701, 706 (Tex.Crim.App. 1981), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); *Montes v. State,* 870 S.W.2d 643, 645 (Tex.App.—El Paso 1994, no pet.). Accordingly, it is not error to disallow a hypothetical question based on the particular facts of a case. *White,* 629 S.W.2d at 706; *Montes,* 870 S.W.2d at 645.

▆▆▆ The court may restrict voir dire where the questions are duplicitous or repetitious or where the venireman has already stated his or her position clearly and unequivocally; further, the court may restrict questions that are not in proper form. *Dinkins v. State,* 894 S.W.2d 330, 345 (Tex.Crim. App.1995). Where the question is precluded because of improper form, and there is not an absolute limitation placed on the underlying substance of a defendant's voir dire question, it is incumbent upon defense counsel to rephrase the improperly phrased question or waive the voir dire restriction. *Trevino v. State,* 815 S.W.2d 592, 601 (Tex.Crim.App. 1991).

▆▆▆ The Appellant contends that his counsel at trial only indicated to the court that he wanted to inquire into general feelings concerning gratuities and his inquiry was not fact-specific. However, the question to the panel began with the indication what testimony was going to be given. That, coupled with the explanation to the trial judge that Appellant was referring to specific food and gift items, certainly indicates fact specificity. The court's admonishment not to refer to the facts of the case and its suggestion that defense counsel should tell the panel why counsel cannot go into the facts of the case, support this conclusion. We find that the court did not abuse its discretion. Also, we find that the court did not restrict Appellant from making further, more general inquires into the particular subject; accordingly, Appellant has waived his contention on appeal. Appellant's Point of Error No. One is overruled.

### B. Applicability of Voir Dire Limitation to Punishment Stage

In Point of Error No. Two, Appellant contends that the question proposed concerning gratuities was a proper question for the punishment hearing. Appellant's sole authority for this proposition is *Ryan v. State,* 874 S.W.2d 299 (Tex.App.—Houston [1st Dist.] 1994, pet. granted). This case was ordered permanently abated due to the death of the Appellant. *Ryan v. State,* 891 S.W.2d 275 (Tex.Crim.App.1994). Moreover, we are not disposed to change our prior holdings finding that the inquiry to the jury panel was fact specific and was waived. Accordingly, Point of Error No. Two is overruled.

### C. Legal Sufficiency of The Evidence

In Point of Error No. Four, Appellant argues that the evidence is legally insufficient to support the conviction in both causes. In reviewing the sufficiency of the evidence to support a criminal conviction, we are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319–20, 99 S.Ct. 2781, 2789–90, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App. 1991); *Nevarez v. State,* 847 S.W.2d 637, 643 (Tex.App.—El Paso 1993, pet. ref'd). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State,* 788 S.W.2d 1, 6 (Tex.Crim. App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Nor do we resolve any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State,* 819 S.W.2d 839, 843 (Tex. Crim.App.1991), *quoting Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

Viewing the evidence in the light most favorable to the verdict, the State presented evidence that Appellant and her husband,

Richard Moncada, were the owners of a printing company named Richard's Printing. At trial, Rosa Hernandez testified that she worked at the company from October 1989 until November of 1991. She worked as a typesetter but occasionally assisted with the billing. One of her duties included reconciling invoices with check stubs for payments received. Hernandez related that a large portion of the firm's business was with Sierra Medical Center in El Paso, Texas. Approximately 65 percent to 75 percent of the printing firm's business was with the hospital. She stated that she would sometimes have difficulty finding an invoice for a check stub issued by Sierra Medical. In those instances, Appellant would tell her to put those stubs to the side. Hernandez testified that she never heard anyone at the company complain of Sierra Medical's payment practices regarding the invoices issued by Richard's Printing.

Hernandez stated that Appellant primarily dealt with two individuals at Sierra Medical—Yolanda Davis in the accounting department and Manny Lopez, Appellant's co-defendant, in the purchasing department. Hernandez related that while most clients of the printing company paid through the mail, Sierra Medical's payments were handled in a different manner. On Fridays, Yolanda Davis would call and tell Appellant that the check was ready. Appellant would then pick up the check and cash it at the bank. Appellant would go into her office and come out with manilla envelopes folded in half and covered with masking tape. Davis or her husband would pick up one package and Lopez would come by and get the other package. The witness stated that she informed an individual named Mr. Bass at Sierra Medical regarding what she had observed at the printing company.

Merle Bass, the chief financial officer at Sierra Medical, stated that he began an investigation involving the finance and accounting departments at the medical center after his discussion with Rosa Hernandez. His investigation uncovered a number of falsified payments to Richard's Printing where the documentation had been altered. He contacted the internal audit department of the

medical center's parent company and local accounting firms. As a result of the investigation, Bass determined that the individuals from Sierra Medical responsible for the altered documents were Manny Lopez and Yolanda Davis.

Norma Braun, the human resources manager at the hospital, testified that she assisted in the investigation concerning the irregularities in the purchasing department. She interviewed Manuel Lopez and obtained the following statement, in relevant part:

I am giving this statement freely without threat of punishment or hope of reward of my own free will. I accept responsibility and admit to having accepted gifts and financial kickbacks from Richard's Printing. I received these gifts and financial remunerations for signing shipping and receiving records for merchandise not received by Sierra Medical Center. This has been going on for approximately two years. In return for signing for merchandise not received I would receive cash payments of up to 50 percent of the invoice amount billed by Richard's Printing. I have received approximately eight thousand dollars over the last two years.

Under similar circumstances, Brenda Denham, the hospital's director of human resources, obtained the following statement from Yolanda Davis:

Of my own free will, I accept responsibility for and admit to duplicating invoices at Sierra Medical Center which resulted in double payments to Lucy Moncada of Richard's Printing. To my knowledge Richard knew nothing of this, but I am not sure. This has been going on since 1990, approximately one and a half years. In turn for duplication of invoices I would receive monetary gifts, approximately ten percent of duplicate invoice amount. I have received approximately five thousand dollars over the last one and a half years. I do not wish to state why I did this, I do not want to get anyone else involved. I am not aware of anything else of this nature occurring in this facility.

Stephen Gaunt testified that he was the director of security for Sierra Medical Cen-

ter. When the investigation started, Gaunt secured the records and documentation pertaining to Richard's Printing in the accounts payable department of the hospital. He found that 13 "check batches" and other supporting documentation of records pertaining to Richard's Printing were missing and could not be located in the archives of the hospital. The amount of these missing checks totaled $120,767.22. Gaunt also related that during this time, representatives from Richard's Printing presented him with numerous invoices asserting invoiced amounts from the printing company that had not been paid by the hospital. One such amount totaled $28,-363.99. Gaunt found through checking the various records that these invoices had been paid. Another such claim totaled $48,463.92. Gaunt found that $26,081.79 of that amount was paid although the remaining amount could not be verified due to the missing documentation. Another sum was presented totaling $23,084.79. The witness was able to substantiate payment of $21,684.48 of that amount.

Gaunt held several meetings with the Appellant and her husband. The tapes of these meetings were played to the jury. Appellant related during these meetings that her husband and the printing company had nothing to do with the problems encountered. Appellant maintained that Sierra Medical was behind on payments to the business. As a result, she contacted Yolanda Davis and offered her 25 percent of the invoice payments if she could work on speeding up payment. Appellant was shown documents demonstrating that the hospital had been double billed on numerous occasions for items never received. Appellant admitted that Davis would make up some paper work and Appellant would match it with an invoice. Appellant admitted she knew this was totally illegal.

Appellant also related that she and Manuel Lopez came to an arrangement whereby she would bill the hospital for items not sent and Lopez would falsify the documentation and make entries that the amounts were received. Lopez would then get half of the amount involved. Appellant stated that she would keep the cash amounts separate from the business account and would spend the money on personal items.

Patricia Ann Joachim, a certified public accountant, testified that she managed the audit of the hospital's records. She stated that she found a number of questionable transactions where a dollar amount could be verified in those situations where an invoice was paid on one date and then paid again on another date. The total amount of these questionable transactions was approximately $240,000.

Appellant's co-defendant, Manuel Lopez testified in his own defense. He stated that the seeming irregularities regarding the invoices and purchase orders were due to him changing the order to take advantage of a better bulk price. He denied ever receiving kickbacks at any time.

The Appellant testified in her own defense. She admitted to several instances where she received double payments and split the gain with Yolanda Davis. However, regarding most of the specific allegations of the indictment, she indicated she either disputed the double payment or asserted it was a mistake not involving criminal intent.

 On appeal, Appellant maintains that as a large portion of the amounts involved were in dispute or asserted as set-offs for unpaid invoices, the case was civil in nature and should not have been the subject of a criminal prosecution. She *cites Stockman v. State*, 826 S.W.2d 627 (Tex.App.—Dallas 1992, pet. ref'd) in support of this contention. In *Stockman*, a dispute arose between a homeowner and the home builder concerning the terms of the contract both parties had signed. The parties disagreed regarding at what point of completion of the contract the builder-defendant could take his profit. *Id.* at 626. The entire matter was covered by the written contract between the parties. *Id.* at 634. It was clear that the defendant had contractual claims to the sums he took and it was not clear who actually owned the money in question. *Id.* at 635. The court held that the matter was entirely civil in nature and did not invoke criminal jurisdiction. *Id.* at 636.

In the present case, viewing the evidence in the light most favorable to the verdict, the jury was entitled to find that Appellant engaged in a pattern of conduct that constituted theft. Appellant's false billing and attainment of double payments was not part of any contractual understanding that was before the jury. If the jury believed her statements that she did not deposit the cash she received in the business account but used it for personal purposes, they could have readily determined that the over billing and false billing were not contractual in nature. Appellant deceptively obtained the funds involved by enlisting two others in "kickback" schemes. We find Appellant's contentions that the dispute was civil in nature are without merit. Point of Error No. Four is overruled.

## D. Factual Insufficiency

In Point of Error No. Six, the Appellant contends that the evidence was factually insufficient to sustain the conviction. In reviewing a factual sufficiency of the evidence challenge, this Court considers all of the evidence, but does not view it in the light most favorable to the verdict. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996); *Taylor v. State*, 921 S.W.2d 740, 745 (Tex.App.—El Paso 1996, no pet.). We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129; *Taylor*, 921 S.W.2d at 745. In conducting a factual sufficiency review, the reviewing court cannot substitute its conclusions for those of the jury. *Davila v. State*, 930 S.W.2d 641, 647 (Tex.App.—El Paso 1996, pet. ref'd); *Taylor*, 921 S.W.2d at 746. It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Davila*, 930 S.W.2d at 647; *Taylor*, 921 S.W.2d at 746. Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Id.*

Appellant asserts the same arguments posed in her legal sufficiency contention. She asserts that the explanations stated by Appellant and Lopez regarding the transactions coupled with sloppy record keeping on the part of Sierra Medical demonstrate the evidence to be factually insufficient. The State presented the prior statements of Davis and Lopez that they engaged in a kickback and double-billing scheme involving Appellant and documentary evidence was offered showing alterations that would be consistent with such a scheme. While the testimony of Appellant and Lopez offers differing explanations of the State's evidence, it was for the jury to differentiate between the two stories. We cannot say that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Point of Error No. Six is overruled.

## E. Evidentiary Insufficiency of Currency Allegation

In Point of Error No. Eight, Appellant argues that the evidence was insufficient in that the State failed to prove theft of "United States Currency" in excess of $20,000. Each paragraph of the two theft indictments alleges that Appellant appropriated "United States Currency." Appellant maintains that as the sums involved were in the form of checks, the State has failed to meet its evidentiary burden. However, if a check is subsequently negotiated or cashed, there is no variance or evidentiary lack in alleging sums of cash as being appropriated. *Jackson v. State*, 646 S.W.2d 225, 226 (Tex.Crim. App.1983); *Compton v. State*, 607 S.W.2d 246, 252 (Tex.Crim.App.1980).

There was evidence before the jury that Appellant always cashed her checks before returning to the office on the Fridays when she would pick up the checks from Sierra Medical. Accordingly, there is sufficient evidence to support the currency allegations. Point of Error No. Eight is overruled.

## F. Double Jeopardy

In Point of Error No. Ten, Appellant contends that the conviction in this cause should be barred in that it violated the double jeopardy provisions of the federal and state constitutions. Appellant was charged in two separate indictments with two felony offenses of theft. Each indictment alleged the thefts occurred due to one scheme and

continuing course of conduct and that the aggregate of the amounts stolen was over $20,000.[1] Each aggregation paragraph in each indictment is different in some aspect when compared. Either the date or amount alleged stolen is different although the owner is the same in each aggregation paragraph in each indictment. The first indictment contains sixteen aggregation paragraphs. These allegations involve the transactions between Appellant and Manuel Lopez. The testimony adduced at trial revealed that in these instances, Lopez altered purchase orders to reflect the authorization of a larger order than originally authorized. The second indictment contains thirty-two aggregation paragraphs. These allegations involve the transactions between Appellant and Yolanda Davis. These transactions involved the double billing for invoices that had been previously paid. Both indictments were tried in one trial.

The Fifth Amendment of the United States Constitution and Article I, Sec. 14 of the Texas Constitution both provide three separate guarantees: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *Phillips v. State,* 787 S.W.2d 391, 393 (Tex.Crim.App. 1990). As Appellant was subjected to only one trial, only the third consideration is before us. *Cervantes v. State,* 815 S.W.2d 569, 573 (Tex.Crim.App.1991), *cert. denied,* 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992).

The first step in a double jeopardy analysis involving multiple punishments is to determine if Appellant's conduct constituted more than one offense. This is largely a matter of state law. *Iglehart v. State,* 837 S.W.2d 122, 127 (Tex.Crim.App.1992). In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court provided the following rule of statutory construction to determine whether the legislature intended multiple punishment:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. *Id.*

When cumulative sentences are imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from assessing greater punishment than the legislature intended. The Double Jeopardy Clause does not negate the ability of the legislature to authorize multiple punishments simply because two criminal statutes may be construed to proscribe this same conduct under the *Blockburger* test. *Cervantes,* 815 S.W.2d at 573–74.

In the present case it appears that as between the two indictments, each aggregating paragraph requires proof of an addition fact that the other does not. At the very least, a different amount is alleged as being illegally appropriated and, in most cases, a different date is alleged. In *Iglehart,* a successive prosecution, the Court of Criminal Appeals held that differing descriptions of the items that were stolen requires the State to prove facts in one case that are not essential to the other prosecution. *Iglehart,* 837 S.W.2d at 128. However, Appellant contends that the provisions of TEX.PENAL CODE ANN. § 31.09 (Vernon 1994) involving the aggregation of amounts involved in theft, demonstrate that the legislature did not intend to allow multiple punishments in this instance. This section provides:

> When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense. *Id.*

Appellant *cites Lehman v. State,* 792 S.W.2d 82, 85 (Tex.Crim.App.1990) in support of this contention. In *Lehman,* the Court of Criminal Appeals stated that Section 31.09 constituted one offense and the fact that one could not cause the individual aggregation paragraphs to be severed out of

---

1. Only the second indictment is before us on appeal.

the indictment buttressed this holding. *Id.* However, this holding dealt with whether it was appropriate to instruct the jury that the State could prove less than all the aggregation paragraphs alleged in the indictment and not suffer an evidentiary failure as long as the amount proved was in the appropriate range to substantiate the offense charged. *Id.* at 84–85. We find that this holding does not indicate that the legislature has proscribed multiple punishments in this instance. As there are differing facts to be proved between the two indictments, we find that there is no violation of the Double Jeopardy Clause. We also note that the each indictment involves separate and distinct criminal conduct. The first indictment involved various transactions between Appellant and Manuel Lopez. The second indictment alleged a pattern of conduct between Appellant and Yolanda Davis. Each involved a different pattern or scheme and there is no indication that the three operated in concert or that Davis and Lopez knew of each other's involvement. In fact, Davis stated that she was not aware of any illegal conduct save her own. Accordingly, each indictment depicts a separate criminal offense. Point of Error No. Ten is overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.