Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



JUAN DOMINGUEZ A/K/A JUAN
CHAVEZ A/K/A JUAN CHAVEZ
DOMINGUEZ,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-02-00211-CR

Appeal from the

205th District Court

of El Paso County, Texas

(TC# 20010D05837)




MEMORANDUM OPINION

           This is an appeal from a jury conviction for aggravated assault with a deadly weapon,
namely hands and knees. The jury set punishment at seven years’ imprisonment. We affirm
the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE

           On February 11, 2001, Yvette Dominguez (Yvette) returned to her own home after
spending the day with her twin sister Yvonne. Her husband, Appellant Juan Dominguez
(Dominguez), got upset, apparently because she had spent the day with her sister and had not
cooked him dinner. An argument ensued, during which Dominguez punched Yvette in the
face with his fist, knocking her and their two month old baby, whom she was holding, into
the dresser. He grabbed the baby, shook him, and threw him onto the bed. He proceeded to
beat Yvette, kneeing her in the face and punching her all over her body, including the head. 
Yvette estimated that the attack lasted for thirty minutes. Yvette testified that Dominguez
had over twenty years of martial arts training and that Dominguez used that training during
the attack, though during cross-examination she admitted that one does not have to be a
martial arts expert to make a fist.
           After Dominguez stopped attacking her, he would not leave until Yvette called his cell
phone and left a message saying that she had been beaten up by some “Cholos.” Yvette
described her condition at that point:
I was just hurting everywhere, inside, so bad. I just wanted to keep breathing
and keep my mentality going, because I felt like I was going to pass out. I was
bleeding so bad, I couldn’t control the bleeding. I was afraid that I wasn’t
going to be able to stop the bleeding.
 
And everything hurt. Everything. And my throat was swollen. And I couldn’t
see no more after a while. My eyes swelled up so bad I couldn’t see through
them no more.
 
My nose was so busted I had to try to breathe through my mouth.

           When Dominguez left, she called Yvonne. Yvonne testified that when she arrived at
the house, she saw that Yvette had been beaten up. Her eyes were swollen and closed, she
had a big bump on her forehead, and she was bleeding profusely. Yvonne called the police
and 911. The paramedics arrived before the police and took Yvette to the hospital.
           Officer David Briones, a patrol officer for the El Paso Police Department, responded
to the dispatch and was able to locate Yvette at the hospital. He noted her appearance that
evening: she had bruises around her neck, on her back, and on her left arm. She was visibly
upset and crying, and seemed to be in pain. He arrested Dominguez at the hospital.
           After being qualified as an expert in deadly weapons, Officer Briones further testified
that hands are weapons and that in his experience as a police officer he had learned of people
who have died from being assaulted by hands and feet. Additionally, he has personally come
across instances where victims have been severely injured by assaults with the hands and
feet, including one case of serious internal injuries.
           Dr. Richard Saunders, the emergency room physician who treated Yvette, testified that
when he saw Yvette, she had swelling above both eyes, both orbits, her forehead, and in the
right posterior skull. X-rays revealed that she had a fractured nose. She also had a small
laceration above her right eyebrow. Yvette complained of hearing loss and upon inspection,
they found blood behind her right eardrum. She also complained of chest pain, neck pain,
and back pain. Dr. Saunders was particularly worried about a concussion, as she did not
remember whether she lost consciousness. He ran a number of tests to rule out any serious
bodily injuries such as subdural hematoma, cerebral contusions, orbital fractures, or fractures
to the vertebrae. Such injuries, if present, could cause memory loss and a change in cognitive
function. Dr. Saunders further testified that he had heard of people being seriously injured
or killed by being assaulted by hands and feet, though he personally had never seen such a
case.
           Jeanne Ochoa testified that she met Dominguez after the assault through a dating
service and began dating him. Dominguez admitted to Ochoa that he was married, that his
wife had filed charges against him for assault, and that he did, in fact, assault her. He said
that he beat her very badly with his hands, and that at the time of the assault, his wife was
holding the child. After the incident, his wife was unidentifiable.
           According to Yvette, at the time of trial she still had problems breathing through her
nose, had a ringing in her right ear, pain in her lower back and ribs, and swelling in her knee.
           Dominguez was indicted for aggravated assault with a deadly weapon. A jury tried
Dominguez and found him guilty.
II. DISCUSSION
           In Issue No. One, Dominguez asserts that the evidence is legally insufficient to
establish that he used his hands and knee as deadly weapons


. When reviewing the legal
sufficiency of the evidence, we must view the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the essential elements
of the alleged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979); Teer v. State, 923 S.W.2d 11, 17 (Tex. Crim. App. 1996);
Dominguez v. State, 62 S.W.3d 203, 205 (Tex. App.--El Paso 2000, pet. ref’d). It is
exclusively the jury’s role to evaluate the credibility of witnesses and to weigh the evidence.
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); Hernandez v. State, 946
S.W.2d 108, 110-11 (Tex. App.--El Paso 1997, no pet.). Our only duty is to determine if
both the explicit and implicit findings of the trier of fact are rational by viewing all the
evidence admitted at trial in the light most favorable to the verdict. Dominguez, 62 S.W.3d
at 205.
           A person commits an assault by intentionally, knowingly, or recklessly causing bodily
injury to another. Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon 2003). An assault becomes
an aggravated assault when a person uses or exhibits a deadly weapon during its commission. 
Id. § 22.02(a)(2). A deadly weapon is “anything that in the manner of its use or intended use
is capable of causing death or serious bodily injury.” Id. § 1.07(a)(17)(B) (Vernon 2003 &
Supp. 2004). Serious bodily injury is defined as “bodily injury that creates a substantial risk
of death or that causes death, serious permanent disfigurement, or protracted loss or
impairment of the function of any bodily member or organ.” Id. § 1.07(a)(46).
           Hands and knees are not deadly weapons per se, but may become deadly weapons
when they are used in a manner capable of causing death or serious bodily injury. Turner v.
State, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983); Powell v. State, 939 S.W.2d 713, 717
(Tex. App.--El Paso 1997, no pet.); Gillum v. State, 888 S.W.2d 281, 288 (Tex. App.--El
Paso 1994, pet. ref’d). The State is not required to show that serious bodily injury did in fact
occur, only that in the manner the hands or knees were used, they were capable of causing
serious bodily injury. See Hill v. State, 913 S.W.2d 581, 584 (Tex. Crim. App. 1996). 
Although helpful, expert testimony is not required to establish that a weapon is a deadly
weapon. Denham v. State, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978); Bailey v. State, 46
S.W.3d 487, 492 (Tex. App.--Corpus Christi 2001, pet. ref’d); Hester v. State, 909 S.W.2d
174, 179 (Tex. App.--Dallas 1995, no pet.).
           Viewing the evidence in the light most favorable to the verdict, we cannot say that it
was irrational to conclude that Dominguez’s hands and knee qualified as deadly weapons. 
 The evidence reveals that Dominguez, a “big guy,” had trained in the martial arts for over
twenty years and that he had participated in a number of tournaments. Yvette testified that
he used this martial arts training during the estimated thirty-minute assault. Both Officer
Briones, who was qualified as an expert in weapons, and Dr. Saunders acknowledged that
it was possible for someone to be killed or seriously injured in an assault using hands and
feet. Officer Briones had personally come across at least one such case. The injuries in this
case were severe enough for Dr. Saunders to worry about serious injuries, including subdural
hematoma, cerebral contusions, and fractures to the vertebrae. While Dr. Saunders ruled
these serious injuries out, the injuries that did occur included marked swelling around both
eyes, the orbits, the forehead, the nose, the lip, and the skull. Yvette had a laceration above
her right eyebrow, blood behind her eardrum that affected her hearing, a fractured nose, pain
in her neck, back, and chest, and possibly a concussion. All these were a result of getting
punched in the head “many times,” getting kneed in the head, and getting hit all over the
body. Considering this evidence in the light most favorable to the verdict, we find that a
rational jury could have concluded that Dominguez used his hands and knee in a manner that
was capable of causing serious bodily injury. We therefore overrule Appellant’s Issue No.
One.
           In Issue No. Two, Dominguez maintains that the trial court committed harmful error
by not allowing him to question the jury panel on the concept of lesser-included offenses. 
During voir dire, counsel for Dominguez attempted to discuss the concept of lesser-included
offenses. The State objected to voir dire on this subject. At a bench conference, counsel for
Dominguez asserted that he anticipated a lesser-included offense charge and that he was
entitled to examine the jury panel on the law of lesser-included offenses. He specifically
stated the question he wanted to ask: “I am just going to ask them if they understand the
concept you can acquit on a higher charge and convict on a lower charge, and see if anybody
has a problem with that.” The trial court did not allow this question on the grounds that the
defense had already covered lesser-included offenses when he discussed the different grades
of assault and the requirements for each grade. A lesser-included offense charge was, in fact,
submitted to the jury at the conclusion of evidence at the guilt/innocence phase of trial. The
charge stated:
Unless you so find beyond a reasonable doubt, or if you have a reasonable
doubt thereof, you will find the Defendant, Juan Dominguez, not guilty of
Aggravated Assault with a Deadly Weapon as charged in the indictment
(Verdict Form A) and you will next consider whether the Defendant is guilty
of Assault.

The elements and definitions of assault were included in the charge. 
           The right to counsel guaranteed by Art. I, § 10 of the Texas Constitution includes a
right to question prospective jurors during voir dire. Gonzales v. State, 994 S.W.2d 170, 171
(Tex. Crim. App. 1999). However, the trial court has broad discretion over the voir dire
process. Sells v. State, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). Therefore, a challenge
to a trial court’s restrictions on voir dire questioning is reviewed for an abuse of discretion. 
Id. at 755-56; Moncada v. State, 960 S.W.2d 734, 736 (Tex. App.--El Paso 1997, pet. ref’d). 
The trial court abuses its discretion when it restricts a proper question into a proper area of
inquiry. Sells, 121 S.W.3d at 755-56. A question is proper if it aims at discovering a juror’s
views on an issue applicable to the case. Id. at 756; Moncada, 960 S.W.2d at 736. 
Nevertheless, a trial court may limit voir dire where the questions are duplicitous or
repetitious. Dinkins v. State, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995); Moncada, 960
S.W.2d at 737. If error is found, the error must be subjected to harm analysis. Gonzales, 994
S.W.2d at 171.
           The trial judge disallowed the specific question regarding the ability of the prospective
jurors to understand that they could acquit on a higher charge and convict on a lower charge
on the grounds that the defense had already explained the difference between the different
grades of an assault. In other words, the trial judge understood this question to be repetitious. 
An examination of the record reveals that the prosecution first discussed the different levels
of assault, explaining the difference between felony assault and misdemeanor assault. The
defense then questioned the venire members extensively on whether they understood the
concept of proportionality and making the punishment fit the crime. He used a number of
examples, including distinguishing between stealing a marker and a $2 million painting, in
order to drive home the importance of proportionality. After these examples, defense counsel
asked questions regarding the necessity of acquittal if the prosecution did not prove every
element of aggravated assault with a deadly weapon. He then went into the specifics about
the different levels of assault and what is required for each, explaining how “the law of
assault is built or stacked on top of each other” and asking questions. After the trial court
denied defense counsel the opportunity to ask his question regarding lesser-included
offenses, defense counsel was allowed to ask more questions about whether the venire
members thought fairness dictated that a person should be charged with and punished for
only the level of offense actually committed. Thus, the record reveals that the attorneys for
both the State and defense discussed the different grades of assault and what it takes to move
from one level to the next. Counsel for the defendant stressed the need for proportionality
and focused on whether the venire members could convict on the level of the crime actually
committed and not simply what was stated in the indictment. Our review of the questions
relating to the different grades of assault, the necessity of proportionality, and to convicting
people only for the level of the crime actually committed reveal that the defense had explored
the substance of his lesser-included offense question, such that the trial court did not abuse
its discretion in finding the specific question excluded as repetitious.
           Even if the trial judge erred in not permitting the specific question proffered by the
defense, this error was harmless. The judge instructed the jury to consider the lesser-included offense of assault only if they found Dominguez not guilty of aggravated assault
with a deadly weapon. In other words, the jury was to take up the issues sequentially and
first decide whether or not Dominguez was guilty of aggravated assault with a deadly
weapon. Only if they found him not guilty were they then to consider the lesser-included
offense. It is presumed that the jury followed the instructions in the jury charge. Colburn
v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Therefore, while the issue of a lesser-included offense was raised and submitted to the jury, the jury did not reach the lesser-included offense claim because they found Dominguez guilty of the greater offense. See
Posey v. State, 840 S.W.2d 34, 41 (Tex. App.--Dallas 1992, pet. ref’d) (holding that where
jury convicted defendant of murder, the jury did not reach the lesser-included offense of
voluntary manslaughter). Because the jury did not reach the lesser-included offense claim,
any error in refusing the question about lesser-included offenses was harmless. See Dowthitt
v. State, 931 S.W.2d 244, 251 (Tex. Crim. App. 1996) (holding that any error in voir dire
questioning concerning lesser-included offense of murder made no contribution to the
defendant’s conviction or punishment as he was convicted of the greater offense of capital
murder). Issue No. Two is overruled.
           Lastly, in Issue No. Three, Dominguez challenges the decision of the trial court to
allow evidence of extraneous bad acts during the punishment stage of the trial on the grounds
that he had no notice of these extraneous bad acts. Specifically, Dominguez contends that
he had no notice that the State would introduce evidence that he fathered a child out of
wedlock, evidence of an incident in which Dominguez urged his son to lie to his mother, and
evidence that insinuated drug and alcohol abuse. It should be noted at the outset that the
evidence implying drug and alcohol use was not in fact admitted into evidence, therefore we
will only discuss the first two pieces of evidence.
           On March 26, 2002, Dominguez filed a motion entitled “Motion To Disclose
Evidence Of Other Crimes, Wrongs Or Acts And For Exclusion Of Such Evidence” in which
he requested that the State provide notice of extraneous acts in accordance with Rule 404(b)
of the Texas Rules of Evidence. On November 26, 2001, four months prior to the defense’s
motion, the State provided Dominguez with its “Second Amended Notice of Extraneous
Offenses,” which listed eighteen extraneous offenses that the State might introduce into
evidence. Item #18 on this list alleged that on or about October 1, 2001, Dominguez
committed the offense of injury to a child against Diego Dominguez. The State also
provided Dominguez with a list of potential witnesses, including Carol Pollet and Jeanne
Ochoa, one of Dominguez’s ex-wives and an ex-girlfriend, respectively.
           At the punishment stage of trial, Carol Pollet testified that she filed for a divorce from
Dominguez due to some issues she felt were irresolvable. When asked what those issues
were, Dominguez objected on grounds of relevance. The court overruled the objection and
allowed Pollet to testify to Dominguez’s infidelity and to the fact that he had a child with
another woman. Dominguez again objected, arguing that testimony that Dominguez fathered
a child out of wedlock was prejudicial and had no probative value. And again, the objection
was overruled.
           After testimony from other witnesses that Dominguez had assaulted his daughter and
another ex-wife, Jeanne Ochoa took the stand. Ochoa described the incident listed as #18
in the “Second Amended Notice of Extraneous Offenses” as “Injury to Child.” Dominguez
picked up his son Diego, shook him violently and threw him up against a large sofa. He then
took Diego and locked him in a truck for two minutes. Ochoa then described how, on the
same day, Dominguez told Diego to tell his mother that he had given him medicine when he
did not actually give Diego medicine. At this point, Dominguez objected, contending that
this incident involving the medicine was not on the list of extraneous offenses, that it was not
even an extraneous offense, and that it was improper and irrelevant. The trial court overruled
the objection. On cross-examination, Ochoa admitted that she did not know how telling
Diego to tell his mother that he had given him medicine made Dominguez a bad guy.
           On appeal, Dominguez argues that these extraneous bad acts of fathering a child out
of wedlock and urging his son to lie about taking medicine were inadmissible because he had
no notice of them. We must first note that with respect to the evidence of an illegitimate
child, Dominguez raises a different challenge on appeal than at trial. At trial, Dominguez
argued that the evidence was prejudicial and had no probative value. On appeal he asserts
lack of notice. To preserve error, the complaint on appeal must comport with the legal
objection raised at trial. See Guevara v. State, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003);
Sandoval v. State, 35 S.W.3d 763, 770 (Tex. App.--El Paso 2000, pet. ref’d). Because
Dominguez did not challenge the adequacy of the State’s notice of intent to offer evidence
regarding an illegitimate child at trial, he failed to preserve error on that point. 
           This leaves the objection to the admission of evidence that Dominguez encouraged
Diego to lie to his mother. We review a trial court’s admission of evidence under an abuse
of discretion standard. Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996);
Arzaga v. State, 86 S.W.3d 767, 781 (Tex. App.--El Paso 2002, no pet.). During the
punishment phase of trial, any evidence the court deems relevant to sentencing is admissible,
including evidence of the defendant’s general character and evidence of extraneous bad acts
that are shown beyond a reasonable doubt to have been committed by the defendant. See
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2004); Arzaga, 86 S.W.3d
at 781. Upon timely request by the defendant, the State must provide notice of the intent to
introduce any extraneous bad act. Id. art. 37.07, § 3(g).
           Dominguez filed his “Motion To Disclose Evidence of Other Crimes, Wrongs or Acts
And For Exclusion Of Such Evidence” with the court and delivered a copy to the State. The
record does not reveal whether the motion was ruled on by the court. A motion to the court,
even if it specifically asks the State to provide notice, does not constitute a timely request for
notice under Article 37.07, section 3(g). Mitchell v. State, 982 S.W.2d 425, 427 (Tex. Crim.
App. 1998). Nothing in the record suggests that Dominguez ever requested notice other than
in the form of a motion to the court. Thus, Dominguez failed to timely request notice and
the State was under no compulsion to provide it. However, if the State voluntarily provides
notice, it has a duty to provide complete information, just as if such notice had been properly
requested. Blackmon v. State, 80 S.W.3d 103, 108 (Tex. App.--Texarkana 2002, pet. ref’d). 
In other words, where the state voluntarily provides notice of extraneous offenses, the
defense is entitled to rely on it as complete and accurate. Here, the State, prior to
Dominguez’s attempted request, voluntarily provided Dominguez with a list of extraneous
offenses. Therefore, Dominguez was entitled to rely on it as complete.
           The purpose of the notice requirement of Article 37.07, section 3(g) is to avoid
surprise and trial by ambush. Brown v. State, 54 S.W.3d 930, 933 (Tex. App.--Corpus
Christi 2001, pet. ref’d); Roman v. State, 986 S.W.2d 64, 67 (Tex. App.--Austin 1999, pet.
ref’d). Item number 18 on the State’s list of Dominguez’s extraneous offenses indicates
“Injury to Child” against Diego. Although this does not specifically indicate anything about
encouraging Diego to lie to his mother about taking medicine, this incident occurred on the
same date provided by the State in its notice and was part of the entire incident described by
Jeanne Ochoa. Furthermore, Ochoa was on the State’s witness list. Given these
circumstances, the trial court did not abuse its discretion in admitting this evidence.            Moreover, any error in admitting the evidence was harmless. We must disregard any
error that does not affect a substantial right. Tex. R. App. P. 44.2(b). A substantial right is
affected when the error has a substantial and injurious effect or influence in determining the
jury’s verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Dominguez
claims that he was harmed because he did not receive probation. In support of his claim of
harm, Dominguez cites James v. State, 47 S.W.3d 710 (Tex. App.--Texarkana 2001, no pet.),
ignoring the statement there that “[t]he punishment, standing alone, does not necessarily
show that the error was harmful.” Id. at 714. Dominguez has not shown how the admission
of this evidence substantially influenced the jury’s verdict or how the lack of notice with
respect to this specific incident deprived him of the ability to mount a defense.
           Our own examination of the record does not reveal that any error in admitting
evidence that Dominguez encouraged Diego to lie substantially affected the outcome. First,
counsel for Dominguez was able to mitigate any harm done during cross-examination of
Ochoa, where she admitted that she did not know how this particular incident made
Dominguez a bad man. Second, the evidence about encouraging Diego to lie about receiving
medicine is insignificant in light of remaining punishment evidence. The State argued and
presented evidence to establish that Dominguez had a history of violent outbursts and of
abusing his wives and his children. The State did not rely on the minor incident of
encouraging his son to lie during closing argument when it asked the jury to sentence
Dominguez for no less than ten years. Instead, the prosecutor urged this sentence based on
the severity of Dominguez’s assault on his wife and his abusive past. Considering this
evidence, and the fact that the jury sentenced Dominguez to less time than sought by the
State, we find that any error was harmless and overrule Issue No. Three.
 

           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
July 26, 2004

                                                                              RICHARD BARAJAS, Chief Justice

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)