

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
| CHRISTOPHER MICHAEL SANCHEZ, | | No. 08-17-00244-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 243rd District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20170D03473) |
| | § | |

## **O P I N I O N**

The question in this appeal is whether the trial court abused its discretion in two voir dire rulings.  Specifically, Appellant Christopher Michael Sanchez complains that the trial court erred in (1) restricting his ability to voir dire on the comparative burdens of proof in the judicial system, and (2) preventing him from asking a question seeking a scaled response (i.e. answer "on a scale of 1 to 5").  While as a general proposition both these inquiries might be proper, on the record before us neither merit reversal.  We therefore affirm the conviction below.

### BACKGROUND

In the process of being arrested on an outstanding warrant, a booking officer noticed that Appellant had a stab injury and directed officers take him to a local hospital.  He did not want to go and resisted the officers at almost every turn.  When at the hospital, Appellant kicked one of

the police officers in the chest. The assault was evidenced by a photograph of the shoeprint on the officer's uniform and the officer's testimony that the kick caused him pain. The grand jury indicted Appellant for assault on a public servant. Appellant defended the claim in part based on the failure of the State to appreciate that the assault might have been captured on the hospital's video surveillance system. Whatever video might have existed, however, was overwritten because it was not requested in time. Through cross-examination, Appellant's counsel also questioned how Appellant who was lying prone on the floor could have kicked the police officer in the chest.

A jury convicted Appellant of the offense. In the punishment phase of the trial, Appellant plead true to two enhancement paragraphs detailing two prior felony convictions. The trial court sentenced him to twelve-years' incarceration.

## VOIR DIRE ISSUES

Appellant brings two issues on appeal, both of which pertain to the voir dire. His first issue complains of a limitation on his ability to contrast the different burdens of proof in the legal system. His second issue contends that he should have been allowed to ask the venire to rate on a scale of one to five whether it agreed or disagreed with the statement that it is better for ten people go free than one be convicted. Appellant could ask if the venire agreed or disagreed with the statement, he was simply not allowed to ask for the one to five rating.

### Standard of Review

We review the trial court's limitations on voir dire under the abuse of discretion standard. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim.App. 2002). A trial court may impose reasonable restrictions on exercising voir dire examination. *Thompson v. State*, 267 S.W.3d 514, 517 (Tex.App.--Austin 2008, pet. ref'd), *citing Boyd v. State*, 811 S.W.2d 105, 115 (Tex.Crim.App. 1991). Otherwise, "voir dire could go on forever without reasonable limits."

2

*Barajas*, 93 S.W.3d at 38.  Nonetheless, a trial court abuses its discretion when it limits a proper question concerning a proper area of inquiry.  *Id.*; *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex.Crim.App. 1995).

A proper area of inquiry includes discovery of a potential juror's views on any issue relevant to the case.  *Sells v. State*, 121 S.W.3d 748, 756 (Tex.Crim.App. 2003); *Barajas*, 93 S.W.3d at 38.  A question can be relevant if it seeks to uncover grounds for a challenge for cause. *Barajas*, 93 S.W.3d at 39.  A proper area of inquiry also includes those questions that assist a party in intelligently exercising peremptory challenges.  *Id.*; *Dhillon v. State*, 138 S.W.3d 583, 587 (Tex.App.--Houston [14th Dist.] 2004, pet. struck).  But even if within a proper area of inquiry, the question must be properly phrased.  The trial court has "discretion to restrict voir dire questions that are confusing, misleading, vague and broad, or are improper commitment questions." *Hernandez v. State*, 390 S.W.3d 310, 315 (Tex.Crim.App. 2012), *citing Barajas,* 93 S.W.3d at 38-39; *Sells*, 121 S.W.3d at 755-56 ("In addition, a trial judge may prohibit as improper a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition.").

Even if we find error, we still must find harm before reversing a conviction.  Our harm analysis turns on the nature of the claim being asserted.  *Jacobs v. State*, 560 S.W.3d 205 (Tex.Crim.App. 2018).  If a defendant claims the voir dire restriction violates a constitutional requirement, then the harm analysis follows TEX.R.APP.P. 44.2(a)(the court of appeals "must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment").  Any other error in restricting voir dire implicates Rule 44.2(b)("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

Either below, or now on appeal, Appellant does not claim the limitations on his voir dire implicate a constitutional protection. Accordingly, we apply the Rule 44.2(b) harm standard. *See Easley v. State*, 424 S.W.3d 535, 542 (Tex.Crim.App. 2014)(similarly finding restriction on comparing burdens of proof was judged under non-constitutional error standard).

## Relative Burdens of Proof

The State's prosecutor acknowledged to the jury that Appellant enjoyed the presumption of innocence and that the State was required to prove its case beyond a reasonable doubt. When it came his turn, Appellant's counsel also discussed the burden of proof. As many criminal defense attorneys do, he sought to contrast the criminal burden of beyond a reasonable doubt with other burdens of proof in the judicial system:

> [APPELLANT'S COUNSEL]: Okay. Okay. We're going to talk about standards of proof for a little bit here. Now, before we -- before we get to these, there are other standards of proof that are around law enforcement. There's concepts like probable cause, reasonable suspicion. These are -- these are all standards of proof that fail to actually win any case. Okay. You need -- to win any case at all, you need to have at least proof by preponderance of the evidence, the majority of the credible evidence. Does anybody have a problem with the fact that maybe probable cause isn't going to win the day for any defendant?
>
> [STATE'S ATTORNEY]: Judge, I'm going to object to that as an attempt to contract with this jury.
>
> THE COURT: Sustained.
>
> [APPELLANT'S COUNSEL]: All right. We'll go on to the standards of proof that actually apply to the cases at the end here. The first one's preponderance of the evidence. It's -- like I said, it's sometimes considered 51 percent of the evidence. It's just basically advancing the football past the 50 yard line. You do that, you win a civil case. That's because a civil case is for money usually. Okay. Clear and convincing evidence, that's -- there are several applications of that. The most common one is when the State of Texas is trying to remove your -- well, the children from the parent. They have to prove abuse and neglect by clear and convincing evidence before they allow the State of Texas to remove that child from a family. Now, I don't have really a football analogy, except it will be a lot past the 50 yard line, maybe a field goal. But, you know, it's clear and convincing evidence. It's evidence that gives you a firm conviction of the -- of what you're

trying to prove. And then beyond a reasonable doubt, that's the highest standard of proof.

[STATE'S ATTORNEY]: Judge, I'm going to object to that as a misstatement of the law. Beyond a reasonable doubt is not defined, and --

THE COURT: Sustained.

[APPELLANT'S COUNSEL]: Very well. Anyway, in a criminal case, you're going to have to find the evidence for every element beyond a reasonable doubt.

From this exchange, Appellant contends the trial court erred in disallowing a discussion of the contrasting burdens of proof. No doubt, a defendant has the right to explore the venire's understanding of the term reasonable doubt by contrasting it with other burdens of proof. *Fuller v. State*, 363 S.W.3d 583, 587 (Tex.Crim.App. 2012)("And it strikes us as particularly apt to inquire whether a prospective juror understands that proof beyond a reasonable doubt must *at least* constitute a more onerous standard of proof than preponderance of the evidence and clear and convincing evidence."). [Emphasis in original].

The State concedes as much on appeal but contends that the way Appellant asked the question was improper because his inquiry focused on the quantity of the evidence produced, and not the quality of that evidence. The State then relies on the proposition that if a trial court merely limits a question due to its form, counsel must determine the basis of the limitation and attempt to fashion a question which complies with the trial court's concerns. *See Wright v. State*, 28 S.W.3d 526, 534 (Tex.Crim.App. 2000)("Although appellant is authorized to ask proper questions in a particular area of inquiry, he is not entitled to ask questions in any particular form. Because appellant did not follow through on this topic, we cannot say that the trial court improperly restricted his voir dire of this venire member."); *Howard v. State*, 941 S.W.2d 102, 110-11 (Tex.Crim.App. 1996), *overruled in part on other grounds by Easley v. State*, 424 S.W.3d 535 (Tex.Crim.App. 2014)(where there is no absolute limitation placed on the underlying substance of a defendant's voir dire question, it is incumbent upon defense counsel to rephrase the improperly

5

phrased query or waive the voir dire restriction); *Moncada v. State*, 960 S.W.2d 734, 737 (Tex.App.--El Paso 1997, pet. ref'd)(where no absolute limitation is placed on underlying substance of defendant's voir dire question, defense counsel must rephrase the improperly phrased question or waive the voir dire restriction). From this line of cases, the State claims either that Appellant has forfeited the claim, or that the trial court did not abuse its discretion in granting the State's objection. We agree, but for a slightly different reason.

After explaining preponderance-of-the-evidence and clear-and-convincing evidentiary burdens, Appellant's counsel made the statement "[a]nd then beyond a reasonable doubt, that's the highest standard of proof." The prosecutor objected that the statement was "a misstatement of the law." The prosecutor was in the process of either refining that objection or making another objection when the trial court interrupted and sustained the objection (Prosecutor: "Beyond a reasonable doubt is not defined and --" Trial Court: "Sustained"). We conclude that the first stated ground for the objection--a misstatement of law--was technically correct. Reasonable doubt is not the "highest standard of proof." Technically, "beyond all doubt" would be a higher standard. It is not a standard used in our system, but as *Fuller* points out, it is a standard that the State often uses as a contrasting standard when it explains reasonable doubt. *Fuller*, 363 S.W.3d at 587 ("It is but the flip side of the inquiry that prosecutors engage in routinely during voir dire, designed to test whether prospective jurors will hold the State to the inappropriately onerous standard of proof beyond *all* doubt."). [Emphasis in original]. And the actual charge here contained an explicit reference to a higher burden of proof: "[The State] is not required that the prosecution prove guilt beyond all doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the Defendant's guilt." Thus the trial court may have sustained the objection because Appellant counsel's statement was not precise enough to be true. Beyond a reasonable doubt is

6

the highest standard that we ask a fact-finder to use, but it is not the "highest standard of proof." Given that distinction, Appellant would have been required to either rephrase the statement, or at least approach the bench to understand the rationale of the trial court's ruling and what actual limitation was placed on his voir dire. We think this particularly true given that the trial court had already allowed counsel to contrast other burdens of proof, including preponderance of the evidence and clear and convincing evidence.

Accordingly, we hold that the trial court did not abuse its discretion in sustaining the objection to the single statement of which Appellant complains. Because Appellant has failed to show the trial court would have disallowed a robust discussion of the contrasting burdens of proof through precisely worded statements to the venire, we overrule Issue One.

### Scaled Question on Blackstone's Ratio

Appellant's second issue claims that trial court erred in preventing him from asking questions seeking a scaled response. Appellant's counsel announced his intention to ask the jury to agree or disagree "with the following statements" on a scale of one to five. The trial court quickly interrupted and at a bench conference informed counsel that it considered numerical scaled responses improper contracting questions. Appellant's counsel acknowledged the court's position, but stated the questions were for the intelligent exercise of preemptory strikes. Defense counsel then went on to more simply ask if the venire, one by one, agreed or disagreed with the proposition that "Is it better to let ten guilty go free rather than convict a single innocent person?" Most of the venire disagreed with the statement, a few agreed, and several more declined to answer the question or said they did not know.

On appeal, Appellant argues that the question merely seeks a prospective juror's general philosophical outlook on the justice system and is not a commitment question. "Commitment

7

questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex.Crim.App. 2001). One example might be a hypothetical question, based on the facts of the case that the jury will hear, to gain a venireperson's commitment to vote one way or another. *Atkins v. State*, 951 S.W.2d 787, 789 (Tex.Crim.App. 1997). While it might be possible to ask an improper commitment question using scaled responses, we agree with Appellant that the question he asked was not a commitment question.

Moreover, scaled response questions are not *per se* improper. We have opined that the State in an intoxication manslaughter case could ask the venire members to rate the seriousness of intoxication manslaughter on a scale of one to ten with one being "it's not important" and ten being "it's real important." *Cardona v. State*, 08-07-00161-CR, 2009 WL 3153207, at *3 (Tex.App.--El Paso Sept. 30, 2009, no pet.)(not designated for publication)("By asking the potential jurors to rate how seriously they viewed the offense of intoxication manslaughter, the prosecutor was attempting to determine their views and to expose any biases."). That holding does not command that the opposite is always true--that a trial court abuses its discretion in denying the use of such a sliding scale question. But even assuming an abuse of discretion in denying the question, we conclude there was no harmful error here. Appellant was ultimately able to ask if the venire agreed or disagreed with the proposition. He was only precluded from eliciting a scaled response to this one question.[1] The lack of harm is particularly true given the actual question itself.

Appellant asked the jury to agree or disagree with "Blackstone's Ratio"- "[I]t is better that ten guilty persons escape than that one innocent suffer." *See Coffin v. U.S.*, 156 U.S. 432, 456 (1895), *quoting* Blackstone from 2 Bl. Comm. c. 27, marg. p. 358. The proposition has been cited

---

[1] The record suggests that Appellant desired to pose a scaled response question to other inquires, but they are not identified in our record.

8

as support for the presumption of innocence.  *Coffin*, 156 U.S. at 456 (collecting several historical references to the presumption of innocence, including Blackstone's ratio).  It also been used, however, as a proxy to estimate a quantitative measure for the meaning of reasonable doubt. Michael L. DeKay, *The Difference Between Blackstone-Like Error Ratios and Probabilistic Standards of Proof*, 21 L. & Soc. Inquiry 95, 95-96 (1996)(suggesting that ten to one ratio equates to a 91% probability for reasonable doubt).

Given the ambiguity of the phrase's ultimate meaning, we decline to find harm in not allowing counsel to determine the degree to which the venire agreed or disagreed with it.  For instance, a venireperson might have disagreed with the statement simply because they reject the proposition that the justice system should accept either alternative--allowing any innocent person to be convicted, or any guilty person being set free.  Or given that Blackstone sets a *ratio*, a venireperson might simply disagree with the stated ratio.  Another English jurist advanced a different ratio--five to one--many years before Blackstone.  *Coffin*, 156 U.S. at 456, *quoting* Lord Hale from 1678 as stating, "[I]t is better five guilty persons should escape unpunished than one innocent person should die."  Earlier still, a French writer advocated a twenty to one ratio.  DeKay, 21 L. & Soc. Inquiry at 95-96), *quoting* twenty to one ratio suggested by John Fortescue in 1616. Agreeing or disagreeing with the proposition, whether strongly or not, might simply be a disagreement based on the math.  Finally, a venireperson might disagree with the statement without relating it either to the presumption of innocence, or the nature of reasonable doubt, or any other concept in the court's charge.  Counsel would need to delve into a venireperson's thought process, and no follow-up questions were asked here.  We thus cannot tell how helpful or not the answer to the question would be in exercising peremptory strikes.  Consequently, we cannot determine how helpful or not a scaled response to the same question would be.

Our harmful error analysis considers "everything in the record" including the evidence admitted at trial, the charge, the parties' theories of the case, closing argument, and whether the State emphasized the error. *Easley,* 424 S.W.3d at 542. This was not a particularly close case. Three officers testified to Appellant's confrontational demeanor that evening. Only one officer, the victim, witnessed the assault, but his testimony was supported by a photograph of Appellant's shoeprint on the officer's uniformed shirt. Appellant primarily urged through cross examination that it would improbable that while he was laying prone on the floor, he could have kicked the officer who was standing in front of him. The jury, however, had photographs of the scene and saw both the officer and Appellant; they could much better understand the physics of the assault that we can from a written record. Appellant's argument about the missing video would be relevant only to the extent the State knew the area was being filmed, and that the video would be overwritten in a certain time period. Neither of those predicates were shown. Considering the entire record, we find any error in disallowing the single voir dire question at issue did not affect his substantial rights. *Cf. Easley*, 424 S.W.3d at 542 (finding no harmful error for restriction on counsel's preferred method of describing reasonable doubt when he could approach question in a different way). We overrule Issue Two.

Having overruled all of Appellant's issues, we affirm the conviction below.

February 26, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

10