COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JAMES CROOK,                                                 )

                                                                              )              
No.  08-02-00382-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
383rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20010D03480)

                                                                              )

 

 

O
P I N I O N

 

Appellant James
Crook appeals from separate convictions of thirteen counts of barratry. A jury
found Appellant guilty and assessed punishment at 10 years= confinement, probated for 7 years= community supervision, with the
sentences to run concurrently, and a $10,000 fine.  On appeal, Appellant raises fourteen issues,
in which he challenges the legal and factually sufficiency of the evidence,
asserts that the trial court erred in admitting extraneous offense evidence,
erred in judicial notice rulings, and erred in permitting improper jury
argument, complains of jury charge error, and raises a double jeopardy claim.  We affirm.

FACTUAL
SUMMARY








Appellant and Dr.
Alejandro Jimenez, a chiropractor in El Paso, established a relationship in the
beginning of 1998.  Dr. Jimenez had
several offices around town; he also worked with several other chiropractors,
in particular, Dr. Monteiro and Dr. Ruja. 
Sometime in February or March of 1998, Dr. Jimenez contacted Appellant=s law office by mail and requested a
meeting.  Dr. Jimenez=s letter stated that he wanted to meet
with Appellant in order to start referring cases to each other.  Appellant=s
office manager set up an appointment with Dr. Jimenez and shortly thereafter,
Appellant=s office
began receiving phone calls from Irma Escandon in which she referred clients to
Appellant.  At that time, Appellant also
notified his office staff that they would start receiving referrals from Ms.
Escandon and that they, in turn, would be sending these individuals to Dr. Jimenez
for medical treatment; additionally the individuals=
vehicles would go to County Club Body Shop for needed repairs.  On a weekly basis, Appellant, Dr. Jimenez,
and Mario Munoz, the owner of Country Club Body Shop, would meet at the Bombay
Bicycle Club.

At trial, Ms.
Escandon testified that in 1996, she was employed by Dr. Jimenez.  She described her job as general
telemarketing for Dr. Jimenez=s
offices; she would call individuals whose names she obtained from zip code
rolls or from police reports, which contained the names of individuals who were
involved in car accidents.  She gathered
police reports from the police department at a cost of $4 per report, a fee
that either Dr. Jimenez or Dr. Monteiro would pay.  When she first started telemarketing for Dr.
Jimenez=s office,
she worked out of the Zaragosa location. 
Her salary was $3,000 per month plus a bonus of $25 for each person that
attended the clinic.  According to Ms.
Escandon, after the law changed in 








mid-1997, making it illegal to
solicit people involved in car accidents from a chiropractor=s office, she was moved to an office on
Alameda that was rented by Dr. Jimenez and Dr. Monteiro.  From the new location, Ms. Escandon continued
to telemarket for Dr. Jimenez=s
office.  When yet another law went into
effect, Dr. Jimenez moved her to another office located on the 7200 block of
North Mesa.  This office was actually the
Country Club Body Shop, a business owned by Mario and John Munoz.  Ms. Escandon knew that under this
arrangement, Dr. Jimenez paid the Country Club Body Shop to rent office space
from which she worked, and that he also provided the Body Shop with the funds
for her salary.  Specifically, Dr.
Jimenez deposited money into Mr. Munoz=s
account and Mr. Munoz would then write a personal check to pay
Ms. Escandon=s
salary.  While at this location, Ms.
Escandon continued to solicit individuals from police reports.  

Per Dr. Jimenez=s orders, Ms. Escandon began soliciting
clients from the police reports for Appellant. 
She recalled that Dr. Jimenez told her, AIrma,
go ahead and call the accidents, but refer all to Crook.  He=s
to get all the patients to call him, make appointments for him, and then he
will then make appointments for me, [for Dr. Monteiro and Dr. Ruja].@ 
With regard to the procedure for soliciting clients for Appellant, Ms.
Escandon recalled that she would call the individuals listed on the police
reports and ask them if they needed any assistance with their vehicle or if
they were hurt.  If they responded
affirmatively, she would tell them to call Appellant=s
office.  Within moments, Ms. Escandon
would then call Appellant=s
office and notify his staff that a particular individual would be calling their
office in a few minutes.  If the
individual failed to call, someone from Appellant=s
office would call her back and let her know that no one had called, and would
ask her to please call the individual again to find out why he or she had not
called.








Under this
arrangement, Ms. Escandon had telephone conversations with Appellant, but never
met him in person.  During their
conversations, Ms. Escandon discussed with Appellant how many clients she had
referred to him and she recalled that he made comments like, Awe had a good day yesterday.  Can we have a good day today@ and Aget
more clients in@ the
office?  During one conversation, Appellant
mentioned that he had received twelve of her referrals in one day.  Appellant also told her that he wanted
accidents with high ratings because he would be able to get a better
settlement.  

Ms. Escandon
recalled that at that time there was a lot of competition among attorneys to
procure clients who had been involved in car accidents.  She remembered that on one occasion, a woman
named Cynthia was also obtaining accident reports, but was making contact with
victims before she was able to do so. 
Appellant instructed Ms. Escandon to wait for Cynthia outside the police
station and to follow her.  Ms. Escandon
recalled that she and Alma, one of Appellant=s
secretaries, waited outside the police station for Cynthia and then followed
her as Appellant had instructed.

On several
occasions, Ms. Escandon complained to Appellant about being paid late or about
not having enough money to purchase the police reports.  With regard to Ms. Escandon being paid late,
Appellant told her to call him if she needed anything.  He also instructed her to talk to Dr. Jimenez
because he was her boss.  Regarding the
police reports, Appellant also told her to contact Dr. Jimenez.








Notably, Ms.
Escandon recalled one particular case involving a fatal accident, which had
received newspaper coverage.  Appellant
specifically asked Ms. Escandon to pursue the case vigorously because he wanted
to sign that client.  When she first
contacted the family, they indicated that they were not interested, but
Appellant instructed Ms. Escandon to call again.  Once again, the family stated that they were
not interested, but Appellant insisted Ms. Escandon try again and try another
method as well.  On direct examination,
Ms. Escandon testified that Appellant told her he would pay a lot of money for
that client, however during 

cross-examination, she clarified
that Appellant never told her that he would pay her a lot of money, but rather
he had simply stated he would pay a lot of money.  Ms. Escandon maintained throughout her
testimony that Dr. Jimenez was her boss and that Appellant never paid her any
money.  

Maria Del Carmen
Gonzalez, Appellant=s employee,
testified that she worked for the Appellant from December 26, 1996 to December
14, 1998.  Her duties included setting up
the files and working on the cases.  She
would interview clients and obtain retainer agreements for Appellant to
represent them in their personal injury cases. 


Ms. Gonzalez knew
Ms. Escandon and knew that she called Appellant=s
office from Country Club Body Shop on a daily basis, sometimes up to six or
seven times a day, in order to provide them with the names of accident victims
who were going to call the office.  At
times, Ms. Escandon let them know that the person she was referring to them was
a very good case and that she had details of the case because she had the
police report of the accident.  According
to Ms. Gonzalez, the following procedure was put into place.  Ms. Escandon would call Appellant=s office with the name of the person
that would be calling their office.  Ms.
Escandon would also fax the police report to the Appellant=s office and this information would
then be given to Appellant.  Once the
person called, Appellant immediately took the call.  Appellant would obtain the person=s address and while Appellant was still
on the phone with the potential client, he would give Ms. Gonzalez the address
and she would then go pick up the person and bring him or her back to the
office for an interview.








Appellant also
maintained a tracking system for clients referred to him by Ms. Escandon.  The files of the clients referred to by Ms.
Escandon were labeled ACC@ which stood for Country Club Body
Shop.  Appellant also kept a log of the
referred clients in a steno pad, which he kept in his bottom right hand desk
drawer.

According to Ms.
Gonzalez, the clients who had been referred by Ms. Escandon were then always
referred to Dr. Jimenez or to one of the other two doctors with whom he worked;
depending on which office location was most convenient to the client.  Ms. Gonzalez also recalled that when clients
could not go to Appellant=s
office to sign a retainer agreement, one of 
Appellant=s staff
would take the contract to wherever the client was located, whether it was the
body shop or at his or her residence. 
Sometimes clients were picked up from the body shop or from Dr. Jimenez=s office and retrieved
immediately.  








Alma
Correa-Holmes, another employee of Appellant, testified that she worked for
Appellant from December 1997 through September 1999.  As office manager, her responsibilities
included handling client interviews, settlement packages, and settlement pay
outs.  Ms. Correa-Holmes knew Ms.
Escandon and believed that her job was to refer clients to Appellant.  She also knew Ms. Escandon worked out of the
Country Club Body Shop. 
Ms. Correa-Holmes offered similar testimony to Ms. Gonzalez=s testimony regarding the procedure
used to refer clients to Appellant.  Ms.
Correa-Holmes testified that there was what she described as a Aten second rule@
that applied to clients referred to their office by Ms. Escandon.  Once a client referred by Ms. Escandon
called, Appellant=s staff
had ten seconds to be on their way to that person=s
house; this was to ensure that no one else reached the potential client before
Appellant.  Ms. Correa-Holmes stated that
sometimes they would go to the client=s
house before the person had actually called Appellant=s
office and would wait either down the street or around the corner until someone
from Appellant=s office
called to say that it was okay to pick up that person.  According to Ms. Correa-Holmes, this was all
done per Appellant=s
instruction.  

Similar to Ms.
Gonzalez=s
testimony, Ms. Correa-Holmes stated that files of clients that had been
referred by Ms. Escandon were labeled ACC@ and that clients referred to Appellant
by Ms. Escandon were to be referred to Dr. Jimenez or one of the chiropractors
working with him.  She also testified
that those clients had to be referred to Country Club Body Shop.

Ms. Correa-Holmes
recalled that Appellant stopped getting referrals from Ms. Escandon in May or
June 1999.  At that time, Appellant met
with his staff and told them that they would no longer be accepting new
clients.  It was also during this time
that she saw Appellant remove from the office files of cases that were up for
settlement.  

Valerie Forti,
another one of Appellant=s
employees, testified that she worked for Appellant for about eight months
beginning in January 1999.  Ms. Forti did
not know Ms. Escandon personally, but she knew of her.  She knew that Ms. Escandon worked for Country
Club Body Shop and that her job was to refer clients to Appellant.  Ms. Forti recalled that at first, Ms.
Escandon would call every morning, but then her calls to the office started to
dwindle.  Towards the end of her
employment with Appellant, Ms. Forti noted that Ms. Escandon was no longer
calling the office.








Ms. Forti provided
further details concerning the referral procedure between Appellant=s office and Ms. Escandon.  Specifically, she recalled that Ms. Escandon
would fax copies of the police reports to Appellant for his review.  As soon as a client referred by Ms. Escandon
called, Appellant wanted the client scheduled for an appointment or brought in
as soon as possible, within one hour if possible.  If the referred client did not call, then one
of Appellant=s staff
would need to follow up.  Ms. Forti
stated that Appellant referred the clients to Dr. Jimenez or one of his
affiliated chiropractors and that clients were not given a choice as to which
chiropractor to see.  She recalled that
Appellant, Dr. Jimenez, and someone from the Country Club Body Shop met once a
week at the Bombay Bicycle Club.  In the
mornings, Appellant would ask if anything had come in from Ms. Escandon and
according to Ms. Forti, 90 percent of Appellant=s
clientele came from Ms. Escandon=s
referrals.

At some point,
Appellant held a meeting with the staff and told them that they were no longer
going to receive referrals from Ms. Escandon and that they were not going to
work with Dr. Jimenez.  After this
meeting, Ms. Forti noticed that numerous files were being pulled and that Ms.
Gonzalez and Ms. Correa-Holmes were making copies of them.  In addition, Appellant took some of the files
and put them into his car, but she did not know where he took the files.  

LEGAL
AND FACTUAL SUFFICIENCY

Standards
of Review








In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2788‑89, 61 L.Ed.2d 560 (1979); Lacour v. State,
8 S.W.3d 670, 671 (Tex.Crim.App. 2000). 
We do not resolve any conflict of fact, weigh any evidence, or evaluate
the credibility of any witnesses, as this was the function of the trier of
fact.  See Adelman v. State, 828
S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839,
843 (Tex.Crim.App. 1991); Lucero v. State, 915 S.W.2d 612, 614 (Tex.App.‑-El
Paso 1996, pet. ref=d).  Instead, our duty is to determine whether if
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d
at 421‑22.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.

In reviewing the
factual sufficiency of the evidence, we must determine whether considering all
the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004).  There are two ways in which we may find the
evidence to be factually insufficient: 
(1) the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) after weighing the evidence supporting the verdict and the evidence
contrary to the verdict, the contrary evidence is so strong that guilt cannot
be proven beyond a reasonable doubt.  Id.
at 484-85.  AThis
standard acknowledges that evidence of guilt can >preponderate= in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable doubt.@ 
Id. at 485.  In other
words, evidence supporting a guilty finding can outweigh the contrary proof but
still be insufficient to prove the elements of an offense beyond a reasonable
doubt.  See id. at 481-82; Johnson
v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis v. State, 922
S.W.2d 126, 133 (Tex.Crim.App. 1996). 
Our evaluation should not intrude upon the fact finder=s role as the sole judge of the weight
and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex.Crim.App. 1997).  An
opinion addressing factual sufficiency must include a discussion of the most
important and relevant evidence that supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex.Crim.App. 2003).

 








Solicit
Employment under Section 38.12

In Issue One,
Appellant challenges the legal sufficiency of the evidence to prove the
essential element of Asolicit
employment@ required
by Section 38.12(a) of the Texas Penal Code. 


Appellant was
indicted in Counts II through VII and Counts IX through XIV of knowingly
accepting to represent different named individuals for each count and that Asuch employment resulted from the
solicitation of employment by IRMA ESCANDON in violation of section 38.12(a) of
the Texas Penal Code, and the Defendant=s
conduct was not authorized by the Texas Disciplinary Rules of Professional Conduct
or any rule of court.@  Texas Penal Code Section 38.12(b)(3) states:

(b)        A person commits an offense if the
person:

 

                                                              .               .               .

 

(3)        is a professional who knowingly accepts
employment within the scope of the person=s
license . . . that results from the solicitation of employment in violation of
Subsection (a).

  

See Tex.Pen.Code Ann. '
38.12(b)(3)(Vernon 2003).

Section
38.12(a)(2) of the Texas Penal Code states: 

(a)        a person commits an offense if, with
intent to obtain an economic benefit the person:

                                                              .               .               .

 

(2)        solicits employment, either in person or
by telephone, for himself or another.  

 

See Tex.Pen.Code Ann. '
38.12(a)(2).  

Section 38.01(11)
states in relevant part: 








>Solicit
employment= means to
communicate in person or by telephone with a prospective client or a member of
the prospective client=s
family concerning professional employment within the scope of a professional=s license . . . arising out of a
particular occurrence or event, or series of occurrences or events . . . for
the purpose of providing professional services to the prospective client, when
neither the person receiving the communication nor anyone acting on that person=s behalf has requested the
communication.

 

See Tex.Pen.Code Ann. '
38.01(11)(Vernon 2003).  

Appellant concedes
in his brief that Ms. Escandon did contact the individuals named in Counts II
through XIV of Appellant=s
indictments.  Appellant, however, argues
that Ms. Escandon did not solicit on behalf of him, but rather, her
solicitations were on behalf of Dr. Jimenez.  Appellant asserts Section 38.01(12) of the
Texas Penal Code does not include chiropractors in its definition of
professionals and thus, Ms. Escandon Adid
not solicit employment as defined by Section 38.01(11)@
of the Texas Penal Code.

Viewing the
evidence in a light favorable to the verdict, we conclude that there was ample
evidence to support the jury=s
finding that Ms. Escandon solicited employment for Appellant.  While Ms. Escandon testified that she was
employed by Dr. Jimenez and was paid by Dr. Jimenez through his arrangement
with the Country Club Body Shop, she never met with Appellant in person, and
was instructed by Dr. Jimenez to refer clients to Appellant.  The evidence clearly showed that Ms. Escandon=s job was to refer clients to Appellant
so he could procure contracts with those individuals for the purpose of providing
legal representation to them in their personal injury cases.  Further, in conversations between Ms.
Escandon and Appellant, he indicated that more referrals were desired,
particularly those with higher rating accidents.








Moreover, there was
extensive testimony concerning the referral procedure between
Ms. Escandon, Appellant, and his office staff, from which the jury could
reasonably infer that Ms. Escandon was soliciting employment for
Appellant.  For instance, after Ms.
Escandon referred clients to Appellant=s
office, Appellant required his staff to follow up with any client who did not
call the office momentarily.  On one
occasion, Appellant instructed Ms. Escandon to pursue vigorously a case involving
a fatal accident and told her that he would pay a lot of money for it.  Ms. Forti also testified that 90 percent of
Appellant=s case
load came from Ms. Escandon=s
referrals.  Finally, there was testimony
from the clients named in each of the indictments, in which they testified that
they would have not contacted Appellant had they not been solicited by Ms.
Escandon.

After reviewing
the evidence in the light most favorable to the verdict, we conclude that a
rational jury could have reasonably found that Ms. Escandon solicited
employment for Appellant.  We find that
the evidence was legally sufficient to sustain Appellant=s
convictions under Section 38.12(b)(3). 
Issue One is overruled.  Given our
disposition of Issue One, we need not reach Appellant=s
Issue Two, in which he argues that the evidence was likewise legally
insufficient to convict him under the theory of the law of parties.  

Pay
or Offer to Pay to Solicit Employment

In Issues Three
and Four, Appellant challenges the legal and factual sufficiency of the
evidence to prove that Appellant paid or offered to pay Ms. Escandon to solicit
employment.  These two issues pertain
only to Appellant=s Count
XVII, which states that on or about the 1st day of February, 1998 through on or
about the 17th day of September, 1999, Appellant Adid
then and there, with intent to obtain economic benefit, pay and offer to pay to
IRMA ESCANDON money to solicit employment, and the Defendant=s conduct was not authorized by the
Texas Disciplinary Rules of Professional Conduct or any rule of court.@ 
The charge however read as follows: 
Apay or
offer to pay.@ 








Appellant argues
that he never offered to pay nor did he pay Ms. Escandon any money.  The State argues that the evidence is legally
and factually sufficient to show that Appellant offered to pay Ms. Escandon for
soliciting the clients involved in the fatality accident.  Alternatively, the State contends that the
evidence is legally and factually sufficient under the law of parties.








The evidence at
trial showed that under the arrangement with Dr. Jimenez, Ms. Escandon was
never paid directly by Appellant. 
Rather, Ms. Escandon was at first paid by Dr. Jimenez directly, and then
indirectly through funds funneled to her via the auto body shop.  Further, Ms. Escandon testified that on
the few occasions that she mentioned to the Appellant any problems she was
having regarding her pay, Appellant told her to talk to Dr. Jimenez, her
boss.  We note that the record is silent
as to where Dr. Jimenez received the funds to pay Ms. Escandon in the
first place.  Ms. Escandon did testify,
however, that on one occasion when she complained about her salary, Appellant
told her that if she needed anything, to tell him.  Ms. Escandon also testified that in the
case of the fatality accident, Appellant told her he would pay good money for
that client, but he did not explicitly say he would pay her.  The jury could have reasonably inferred from
Appellant=s
intimations that he was involved in securing payment for Ms. Escandon=s beneficial solicitations.  Moreover, there was extensive testimony
concerning the existence of an on-going relationship between Dr. Jimenez,
Appellant, and the auto body shop, and the development of a system of automatic
referral between the entities, such that the jury could reasonably infer that
Appellant was a party to the arrangement to pay Ms. Escandon for the
solicitation of employment for Appellant, which, in turn, benefitted Dr.
Jimenez.[1]  Viewing the evidence in the light most
favorable to the verdict, we conclude that the evidence to sustain Appellant=s conviction of Count XVII is legally
sufficient.  Reviewing the evidence in a
neutral light, we observe that Ms. Escandon never claimed that Appellant paid
her directly nor did she claim that she was employed by Appellant.  However, this contrary evidence, is not so
strong that guilt could not be proven beyond a reasonable doubt.  Further, the evidence supporting the verdict,
considered by itself, is not too weak to support the guilty finding beyond a
reasonable doubt.  Therefore, we conclude
that the evidence regarding this challenged element of the offense is legally
and factually sufficient.  Issues Three and
Four are overruled.

Conduct
Not Authorized by the Texas Disciplinary Rules of Professional Conduct








In Issues Five and
Six, Appellant challenges the legal and factual sufficiency of the evidence to
prove that Appellant=s
conduct was not authorized by the Texas Disciplinary Rules of Professional
Conduct as alleged in the indictment for Count XVII.  Appellant argues that there was no evidence
that he ever paid or offered to pay money for the referrals and that the only
payment given to Dr. Jimenez, was payments for the medical treatment he
provided the clients.  Appellant further
argues that the evidence was factually insufficient because the testimony of
Mario Martinez, a Texas attorney who testified without objection on the Texas
Disciplinary Rules of Professional Conduct, indicated that there was no
violation of the disciplinary rules if an attorney accepts a client from a
chiropractor when the attorney does not pay a fee to either the chiropractor or
the chiropractor=s
employee.

Rule 7.03(a) provides
in part:

A lawyer shall not by
in-person or telephone contact seek professional employment concerning a matter
arising out of a particular occurrence or event, or series of occurrences or
events, from a prospective client or nonclient who has not sought the lawyer=s advice regarding employment or with
whom the lawyer has no family or past or present attorney-client relationship
when a significant motive for the lawyer=s
doing so is the lawyer=s
pecuniary gain.  

 

Tex.
R. Disciplinary P.  7.03(a), reprinted
in Tex.Gov=t Code Ann., tit. 2, subtit. G (Vernon
2005).

Rule 8.04 states
in pertinent part:

(a) A lawyer shall not:

 

(1)        violate these rules, knowingly assist or
induce another to do so, or do so through the acts of another, whether or not
such violation occurred in the course of a client-lawyer relationship.

 

Tex.
R. Disciplinary P. 8.04(a)(1).








As we discussed
above, the evidence was legally and factually sufficient to show that Appellant
paid or offered to pay Ms. Escandon money to solicit employment for his
economic benefit.  We also observe that
there was testimony from several of Appellant=s
staff that at Appellant=s
behest, they were specifically instructed to require Ms. Escandon to follow-up
with solicited clients who later failed to call his office.  There was also evidence that Appellant was
involved in Ms. Escandon=s
activities at the early stages of client contact, including reviewing the
police reports which she faxed to his office. 
In one particular instance, the fatality accident case, Appellant wanted
to Asign@
that client and insisted that Ms. Escandon continue to contact the family,
despite their lack of interest in procuring legal representation.  Appellant told Ms. Escandon that he
would pay a lot of money for that client. 
Viewing the evidence in a light favorable to the verdict, the evidence
was legally sufficient to find that Appellant=s
conduct was not authorized by the Texas Disciplinary Rules of Professional
Conduct.  

With regard to his
factual sufficiency challenge, Appellant directs our attention to
Mr. Martinez=s
testimony at trial.  While Mr. Martinez=s testimony may have indicated that
there was no violation of the disciplinary rules if an attorney accepts a
client from a chiropractor when the attorney does not pay a fee to either the
chiropractor or the chiropractor=s
employee, Mr. Martinez also testified that it would be a violation of the
disciplinary rules if an attorney had an arrangement with a doctor where they
referred each other cases.  According to
Mr. Martinez, this would be a violation because both parties would be getting
something of value in the joint referral system.  The jury, as the sole judge of the weight and
credibility given to any witness=s
testimony, could have reasonably accepted Mr. Martinez=s
testimony that a joint referral system, such as the one presented through the
evidence admitted at trial, was a violation of the disciplinary rules of
professional conduct.  Applying the
applicable standards of review, we conclude that the evidence was both legally
and factually sufficient to show that Appellant violated the Texas Disciplinary
Rules of Professional Conduct.  Issues
Five and Six are overruled.

EXTRANEOUS
OFFENSE EVIDENCE








In Issue Seven,
Appellant contends the trial court erred in admitting evidence of an extraneous
offense involving Ida Nava.  Relatedly,
in Issue Eight, Appellant argues that the trial court erred in admitting the
testimony of Ida Nava when the Appellant had not received notice of this
extraneous evidence.  In response, the
State asserts that Ms. Nava=s
testimony did not constitute an extraneous offense.  We agree. 

Standard
of Review 

We review the
trial court=s ruling
on the admission or exclusion of evidence under an abuse of discretion
standard.  See Montgomery v. State,
810 S.W.2d 372, 379‑80 (Tex.Crim.App. 1990).  Texas Rules of Evidence 402 states that all
relevant evidence is admissible.  See
Tex.R.Evid. 402.

Witness
Ida Nava=s Testimony

The State called
Ida Nava to testify at trial.  Appellant=s counsel objected on the grounds that
her testimony concerned an extraneous offense, specifically arguing that Ms.
Nava was not a named party in any of the indictments and that her testimony did
not offer evidence that Appellant paid or offered to pay Ms. Escandon to
solicit employment for him.  The State
responded that the testimony was relevant to the allegations in Count
XVII.  The trial court initially sustained
the objection, stating that it was not persuaded that Ms. Nava=s testimony was necessary and that the
State had not demonstrated the basis on which the extraneous offense was
admissible.  The State=s attorney responded that it was its
contention that the offense was not extraneous, but rather proved that Ms.
Escandon solicited employment for the Appellant, which was an element of Count
XVII.  The trial court conducted a voir
dire examination of Ms. Nava, after which it overruled Appellant=s objection.  








In her testimony,
Ms. Nava stated that she was in a car accident in October 1998 and a few days
following the accident she receive a telephone call from a woman at the Country
Club Body Shop.  Ms. Nava identified Ms.
Escandon as the woman that called her. 
Ms. Escandon asked her if she needed someone to repair her vehicle and
apparently had enough information about the accident to suggest to Ms. Nava
that she see a chiropractor.  Ms.
Escandon told her that someone from the Appellant=s
office would be contacting her to make arrangements to have her go into the
office.  Someone from Appellant=s office called her, picked her up, and
took her to Appellant=s
office, where she agreed to retain him as her attorney.  She also testified that she was not given a
choice as to which attorney to see; and that once she met with the Appellant,
he did not give her an option as to which chiropractor to see[2]
or to which body shop to take her vehicle. 


Section
38.12(a)(4) of theTexas Penal Code states:

(a)        A person commits an offense if with
intent to obtain an economic benefit the person:

                                                              .               .               .

 

(4)        pays or gives or offers to pay or give a
person money or anything of value to solicit employment

 

Tex.Pen.Code
Ann. '
38.12(a)(4).

Clearly, Ms. Nava=s testimony provided evidence relevant
to one of the offenses with which Appellant was charged, namely soliciting
employment.  We conclude the trial court
did not abuse its discretion in admitting this evidence.  Accordingly, we overrule Issues Seven and Eight.

JURY
CHARGE ERROR

In Issue Nine,
Appellant argues that the trial judge erred by not further restricting the
definition of Aprofessional@ under Section 38.01(12) of the Texas Penal
Code.  During trial, Appellant=s attorney made the following
objection:








[T]he last phrase under the definition
that talks about, >Registered
by a State agency that regulates a health care profession,= I would ask the Court to consider
putting in, >Excluding
chiropractors,= because
a chiropractor is arguably an individual that would be registered by a State
agency that regulates a health care profession.

I=m going to argue a chiropractor is not
covered by the definition to the jury, but I=m
afraid that the jury might believe that a chiropractor is covered by the last
phrase in that definition of >professional.=

 

The trial court overruled the
objection and denied Appellant=s
request.  On appeal, Appellant argues
that the harm from this error was clear in that Athe
jury could have accepted the first part of Appellant=s
defensive theory, namely that Escandon solicited the accident victims on behalf
of Jimenez, but rejected the second part of his defensive theory, namely that
the solicitation was not a violation of Section 38.12(a) because Jimenez was
not a >professional.=@  Appellant asserts that the definition of
professional provided in the jury charge, necessarily found that Dr. Jimenez
was, in fact, a professional.








In reviewing the
jury charge for any alleged error, an appellate court must examine the charge
as a whole and not as a series of isolated and unrelated statements.  Dinkins v. State, 894 S.W.2d 330, 339
(Tex.Crim.App. 1995), cert. denied, 516 U.S. 832, 116 S.Ct. 106, 133
L.Ed.2d 59 (1995).  The function of the
jury charge is to instruct the jury on the law applicable to the case.  Tex.Code
Crim.Proc.Ann. art. 36.14 (Vernon Supp. 2004-2005).  If the error in the charge was the subject of
a timely objection in the trial court, then reversal is required if the error
is Acalculated to injure the rights of
defendant,@ which
means no more than some harm must result from the error.  Almanza v. State, 686 S.W.2d 157, 171
(Tex.Crim.App. 1984).  A trial court has
broad discretion in submitting proper definition and explanatory phrases to the
jury.  Macias v. State, 959 S.W.2d
332, 336-37 (Tex.App.--Houston [14th Dist.] 1997, pet. ref=d). 
If a term or word is statutorily defined, the trial court must submit
the statutory definition to the jury.  See
Arline v. State, 721 S.W.2d 348, 352 n.4 (Tex.Crim.App. 1986)(statutorily
defined word must be included in the charge as part of the law applicable to
the case); Roise v. State, 7 S.W.2d 225, 242 (Tex.App.--Austin 1999,
pet. ref=d)(statutory
definition should be submitted).

Texas Penal Code
Section 38.01(12) states:

>Professional= means an attorney, chiropractor,
physician, surgeon, private investigator, or any other person licensed,
certified, or registered by a state agency that regulates a health care
profession.

 

See Tex.Pen.Code Ann. '
38.01(12).  [Emphasis added].

The trial court=s charge defined Aprofessional@
using the definition provided by the Texas Penal Code except it left out the
italicized portion above.[3]  Appellant objected to the use of the word
chiropractor, which the trial court sustained. 
We find no error in the trial court=s
decision to include the definition of professional as it did in the jury
charge.  The definition used by the trial
court was that which was statutorily mandated and as such there was no abuse of
discretion.  We therefore overrule Issue
Nine.

In Issue Ten,
Appellant argues that the trial judge erred in refusing Appellant=s requested jury instructions.  Appellant requested that the charge include
the following two instructions:

A chiropractor or
employee of a chiropractor has a right under the First Amendment to the United
States Constitution to solicit employment from prospective clients for the
chiropractor as a legitimate marketing technique.  

 








A chiropractor or
employee of a chiropractor has a right under the First Amendment to the United
States Constitution to solicit employment from prospective clients for the
chiropractors as a legitimate marketing technique and refer said clients to an
attorney unless said attorney pays or gives or offers to pay or give the person
soliciting employment money or anything of value to solicit employment.

 

The trial court denied Appellant=s requests.

We find no abuse
of discretion on the trial court=s
part in refusing to include the Appellant=s
requested instructions.  Appellant=s requested instructions were merely
the holding of Bailey v. Morales, 190 F.3d 320 (5th Cir. 1999).  Such an instruction was not relevant to the
applicable law in this case.  We
therefore overrule Issue Ten.

JUDICIAL
NOTICE

In Issue Eleven,
Appellant argues that the trial court erred by not taking judicial notice of Bailey
v. Morales, 190 F.3d 320 (5th Cir. 1999). 
In response, the State argues that Bailey is a legislative fact
and therefore there is no requirement to take judicial notice of it.

There is no
mandatory requirement for the trial court to take judicial notice of Bailey.  

Tex.R.Evid.
201(d) states, A[a] court
shall take judicial notice if requested by a party and supplied with the
necessary information.@  However, the rule explicitly states it
applies only to judicial notice of Aadjudicative@ facts. 
Tex.R.Evid. 201(a).  If the fact requested to be judicially
noticed is a Alegislative@ fact rather than adjudicative, a court=s decision whether to take judicial
notice of the fact is within that court=s
discretion.  See Aguirre v. State,
948 S.W.2d 377, 380 (Tex.App.‑‑Houston [14th Dist.] 1997, pet. ref=d).








Adjudicative facts
are those facts concerning a Aparticular
event which gave rise to the lawsuit and . . . help explain who did what, when,
where, how, and with what motive and intent.@
See Emerson v. State, 880 S.W.2d 759, 765 (Tex.Crim.App.), cert.
denied, 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994).  Legislative facts are facts that are general,
related to the content of law and policy, and do not concern only the parties
involved in the case at hand.  Id.  In this case, Bailey was not an
adjudicative fact.  Given the content of
the request, the court did not abuse its discretion in refusing to take
judicial notice of the requested matter. 
Appellant=s Issue
Eleven is overruled.

In Issue Twelve,
Appellant contends that the trial judge erred by taking judicial notice of Rule
1.08(d), Rule 7.03, and Rule 8.04 of the Texas Disciplinary Rules of
Professional Conduct.  Appellant argues
that if this Court found Bailey was not an adjudicative fact, then the
Texas Disciplinary Rules of Professional Conduct are similarly not adjudicative
facts.  As we noted in our discussion of
Issue Eleven, if the fact requested to be judicially noticed is a Alegislative@
fact rather than adjudicative, a court=s
decision whether to take judicial notice of the fact is within that court=s discretion.  See Aguirre, 948 S.W.2d at 380.  We find no abuse of discretion in the trial
court taking judicial notice of the applicable Texas Disciplinary Rules of
Professional Conduct.  Such rules were
applicable in the Appellant=s
charge.  Issue Twelve is overruled.

JURY
ARGUMENT

In Issue Thirteen,
Appellant argues that the trial court erred in permitting the State to argue a
theory of criminal liability not alleged in the indictment or authorized in the
charge.  Specifically, Appellant is referring
to the following statement made by the State during its closing argument:

[Appellant] does not have to be the one
to pay [Ms. Escandon] to solicit clients to him, just a person.  And in this case the person was a
chiropractor, and he knew about it.

 








We find that Appellant failed to
object to this portion of the jury argument and, as such, has forfeited his
right to complain about the argument on appeal. 
See Cockrell v. State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), cert.
denied, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997).  Any error has therefore been waived.  Accordingly, we overrule Issue Thirteen.

DOUBLE
JEOPARDY CLAIM

In Issue Fourteen,
Appellant asserts that he should be acquitted for his conviction under Count
XVII because it causes him to be punished twice for the same offense for which
he was convicted under Counts II through VII and IX through XIV, in violation
of the double jeopardy clause of the Fifth Amendment of the U.S.
Constitution.  

Appellant failed
to make a timely request, objection, or motion before the trial on the issue of
double jeopardy.  See Tex.R.App.P. 33.1.  A double jeopardy claim is forfeited if it is
raised for the first time on appeal unless the double jeopardy violation is
clearly apparent on the face of the record and when enforcement of usual rules
of procedural default serves no legitimate state interests.  Gonzalez v. State, 8 S.W.3d 640, 643
(Tex.Crim.App. 2000).  Appellant must
satisfy both prongs of Gonzalez in order to have his double jeopardy
claim, raised for the first time on appeal, considered by this Court.  See Roy v. State, 76 S.W.3d 87, 93
(Tex.App.-- Houston [14th Dist.] 2002, no pet.).  For the reasons stated below, we find that
the Appellant has failed to meet the first prong of Gonzalez.








The double
jeopardy clauses of the United States Constitution and the Texas Constitution
protect against three abuses:  (1) a
second prosecution for the same offense after acquittal; (2) a second prosecution
for the same offense after conviction; and (3) multiple punishment for the same
offense.  Ex Parte Rhodes, 974
S.W.2d 735, 738 (Tex.Crim.App. 1998); Moncada v. State, 960 S.W.2d 734,
741 (Tex.App.--El Paso 1997, pet. ref=d).  The argument raised by the Appellant in this
case involves the third protection.  In
determing whether two statutes constitute the same offense for double jeopardy
purposes, we rely on the Asame
elements@ test
enunciated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180,
76 L.Ed. 306 (1932).  The same elements
test involves determining whether each statutory provision under which a
defendant would be prosecuted requires proof of a fact that the other does
not.  Id. at 304, 52 S.Ct. at
182.  When applying the same elements
test, our double jeopardy analysis must focus on the elements alleged in the
charging instrument and not merely on penal statute.  Parrish v. State, 869 S.W.2d 352, 354
(Tex.Crim.App. 1994), citing United State v. Dixon, 509 U.S. 688, 696,
113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 573 (1993).

In this case,
Appellant was charged in Count XVII with:

If you believe from the evidence,
beyond a reasonable doubt that on or about the 1st day of February, 1998
through on or about the 17th day of September, 1999 in El Paso County, Texas,
the Defendant, JAMES CROOK, did then and there with intent to obtain economic
benefit, pay or offer to pay to IRMA ESCANDON money to solicit employment, and
the Defendant=s conduct
was not authorized by the Texas Disciplinary Rules of Professional Conduct or
any rule of court, then you will find the defendant . . . .

 

The Charge for the remaining counts
read in pertinent part as follows:

If you believe from the evidence,
beyond a reasonable doubt that on or about . . . in El Paso County, Texas, the
Defendant, JAMES CROOK, did then and there knowingly accept employment to
wit:  to represent [NAMED PERSON][4]
in [his/her] claim resulting out of an automobile accident, within the scope of
the Defendant=s license
to-wit:  an attorney licensed to practice
law in the State of Texas, and such employment resulted from the solicitation
of employment by IRMA ESCANDON in violation of section 38.12(a) of the Texas
Penal Code, and the Defendant=s
conduct was not authorized by the Texas Disciplinary Rules of Professional
Conduct or any rule of court, then you will find the Defendant . . . .

 








Both charges allege that Appellant
agreed to accept employment solicited by Ms. Escandon.  However, Count XVII required proof of a fact
that the other counts did not, that is, the factual element of payment to Ms.
Escandon.  As such, based on the face of
the record, we do not find a double jeopardy violation.  Appellant=s
convictions did not violate the double jeopardy clause.  Accordingly, we overrule Issue Fourteen.

The judgment of
the trial court is affirmed.  

 

 

June
30, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

Larsen, J., (Not Participating)

 

(Do Not Publish)











[1]
We note again Ms. Escandon=s
testimony, in which she stated that the scheme as outlined to her was for her
to Ago ahead and call the accidents, but
refer all to Crook.  He=s to get all the patients to call him,
make appointments for him, and then he will then make appointments for me.@





[2]
Ms. Nava was referred to Dr. Montiero, a chiropractor in Dr. Jimenez=s Zaragosa office.





[3]
The trial court=s charge
provided the following definition:

 

>Professional= means an attorney, physician, surgeon,
private investigator, or any other person licensed, certified, or registered by
a state agency that regulates a health care profession.





[4]
Counts II through VII and IX through XIV each named different persons.